# UNITED STATES *v.* KLINGENBERG.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF NEW YORK.

No. 1066. Submitted March 26, 1894. — Decided April 23, 1894.

The action of a collector of customs under § 2 of the act of June 10, 1890,
c. 407, 26 Stat. 131, in estimating the value of paper florins of Austria-
Hungary, in which the value of imported merchandise is expressed in the
invoices, and converting them into the currency of the United States, is
not the subject of appeal to and reversal by the board of general ap-
praisers.

A Circuit Court of the United States has jurisdiction to review the action
of a board of general appraisers in entertaining such an appeal, and in
reversing the action of a collector in that respect.

THE case is stated in the opinion.

*Mr. Solicitor General* for appellants.

*Mr. W. Wickham Smith* for appellee.

MR. JUSTICE JACKSON delivered the opinion of the court.

The question presented for our consideration by the record
in this case is whether the Circuit Court of the United States
for the Southern District of New York has jurisdiction to
review the decision of the board of general appraisers revers-
ing the action of the collector of the port of New York in
estimating the value and converting paper florins into the cur-
rency of the United States on importations of merchandise,
the invoices of which were expressed in paper florins of Aus-
tria-Hungary, from which country the importations were
made.

The appellee, in July, 1892, imported certain merchandise,
consisting of china and glass ware, from Austria-Hungary,
which were entered for consumption at the port of New York
on July 23, 1892. The invoices of this merchandise were made

out in (paper) florins of Austria-Hungary, in accordance with the provisions of section 2 of the Customs Administrative Act of June 10, 1890, c. 407, 26 Stat. 131, which requires that "all invoices of imported merchandise shall be made out in the currency of the place or country from whence the importation shall be made." No consular certificate giving the value of the paper florin accompanied the invoices or was produced by the importer. In reducing the currency of the invoices into money of account of the United States the collector of the port estimated the florin at $0.482, which was the value of the gold florin as proclaimed by the Treasury Department July 1, 1892. The importer duly protested against this action of the collector, because the invoices accompanying the merchandise were not expressed in gold florins, and because in estimating the value of the Austrian florin the collector should have adopted the silver florin as the standard value, as last proclaimed by the Secretary of the Treasury, which was $0.32; that the collector's adoption of the value of the gold florin as the standard necessarily increased the amount of duties to be paid on the importations.

The protest of the importer having been made in due time and form was transmitted by the collector to the board of general appraisers at the port of New York, who, after hearing testimony, decided that the collector should have estimated the florins of the invoices at $0.32 instead of at $0.482, and directed the reliquidation of the entry of the goods on that basis.

Thereupon the collector, on behalf of the United States, made application to the Circuit Court of the United States for the Southern District of New York for a review of this decision of the board of general appraisers. The petition set out the facts already stated, and claimed that the board of general appraisers was in error in holding that the reduction of the currency of the invoice into money of account of the United States should have been $0.32 to the florin, for the reason that by the estimate of the Director of the Mint, and the proclamation of the Secretary of the Treasury, made July 1, 1892, in conformity with section 52 of the tariff act of Octo-

ber 1, 1890, 26 Stat. 567, it appeared that silver was "the nominal standard, paper the actual standard, the depreciation of which is measured by the gold standard," which, under the proclamation, was fixed at $0.482; that under the values fixed by this proclamation the board erred in reversing the decision of the collector, and in sustaining the protest of the importer in the premises.

The importer moved to dismiss the application of the collector on the ground that the decision of the board of general appraisers complained of could not be reviewed by the Circuit Court under section 15 of the Customs Administrative Act, because that decision related neither to the classification of the merchandise, nor to the rate of duty thereon. The Circuit Court being of opinion that it had no jurisdiction to enter upon, hear, and decide the questions presented by the collector's petition, granted the motion, and dismissed the application. The United States being dissatisfied with this ruling, the Circuit Court, under the provisions of section 5 of the act of March 3, 1891, c. 517, 26 Stat. 827, certified the question of its jurisdiction in the premises to this court.

It is insisted on behalf of the United States that the collector's decision as to the value of the florin, under the provisions of law and the proclamation of values made by the Secretary of the Treasury on July 1, 1892, was conclusive and not subject to review by the board of general appraisers. This position is rested upon the rule laid down in the cases of *The Collector* v. *Richards,* 23 Wall. 246, 259; *Cramer* v. *Arthur,* 102 U. S. 612; and *Hadden* v. *Merritt,* 115 U. S. 25, 27.

By section 1 of the act of March 3, 1873, 17 Stat. 602, it was provided "that the value of foreign coin, as expressed in the money of account of the United States, shall be that of the pure metal of such coin of standard value, and the values of the standard coins in circulation of the various nations of the world shall be estimated annually by the Director of the Mint, and proclaimed on the first day of January by the Secretary of the Treasury." In pursuance of that act the Director of the Mint having estimated the value of the franc of France at nineteen cents and three mills, and the Secretary of the Treas-

ury having on January 1, 1874, proclaimed it, the question arose in the case of *The Collector* v. *Richards*, 23 Wall. 246, 259, whether goods invoiced in French francs and entered in a custom-house here in March, 1873, were to be charged at this new valuation of the franc. It was said by Mr. Justice Bradley, who delivered the opinion of the court in that case, that "it seems to us . . . that the statute adopts the true method of computing the value of foreign money. The basis of our dollar of account . . . is the standard gold dollar of 25.8 grains, containing one-tenth alloy. The actual coinage in circulation may be diminished in value by abrasion, and this may have some effect on the dollar of account. But the same thing is true in other countries, as the assays in the mint have shown; and the true method of comparing their money of account with ours, when both are based on actual coin, is to compare the standard coins of the two countries in a perfect state, and to ascertain the actual amount of pure metal in each. This is the result at which Congress seems to have arrived, and, as we think, wisely. In making the comparison of the moneys of different countries, their gold coins, if they have such, are employed for the purpose; gold having become the general medium of international exchange, whilst silver is regarded more as a domestic coin, and is usually made a legal tender for only limited amounts. This practice, together with the rejection of the alloy from the estimate, is in accordance with the rules laid down on the subject by the most enlightened economists."

This first section of the act of March 3, 1873, was carried into section 3564 of the Revised Statutes, and again came under consideration in *Cramer* v. *Arthur*, 102 U. S. 612, 619, in connection with section 2903, Revised Statutes, providing for the case of invoices made out in a depreciated currency issued and circulated under authority of any foreign government, and pursuant to which section regulations were established declaring that where the standard value of a foreign currency has been proclaimed by the Secretary of the Treasury, in the manner provided by law, such value shall control in estimating custom duties, unless collectors have been in-

structed otherwise, or unless a depreciation of the value of that currency, " expressed in an invoice from the standard of that currency, shall be shown by consular certificate thereto attached." There was a consular certificate in that case certifying the value of the Austrian florin, and the plaintiff sought to go behind the valuation estimated by the Director of the Mint, and proclaimed by the Secretary of the Treasury, but this was not permitted, for the reason that the value of the Austrian florin, as ascertained and fixed by the Director of the Mint and the proclamation of the Secretary of the Treasury, was as conclusive as though fixed by the statute itself, and all parties interested were conclusively bound thereby. Mr. Justice Bradley, speaking for the court, said: " The proclamation of the Secretary, and the certificate of the consul, must be regarded as conclusive. In the estimation of the value of foreign moneys for the purpose of assessing duties, there must be an end to controversy somewhere. When Congress fixes the value by general statute, parties must abide by that. When it fixes it through the agency of official instrumentalities, devised for the purpose of making a near approximation to the actual state of things, they must abide by the values so ascertained. If the currency is a standard one, based on coin, the Secretary's proclamation fixes it; if it is a depreciated currency, the parties may have the benefit of a consular certificate. To go behind these and allow an examination by affidavits in every case would put the assessment of duties at sea. It would create utter confusion and uncertainty."

In the subsequent case of *Hadden* v. *Merritt*, 115 U. S. 25, 27, construing sections 2838 and 3564, the former requiring all invoices of merchandise subject to a duty *ad valorem* to be made out in the currency of the place or country from whence the importation shall be made, and that they shall contain a true statement of the actual cost of such merchandise in such foreign currency or currencies, without any respect to the value of the coins of the United States, or of foreign coins, by law, made current within the United States in such foreign place or country, section 3564 was in the same language as

section 1 of the act of March 3, 1873, above referred to. It was held in that case that "the value of foreign coins, as ascertained by the estimate of the Director of the Mint and proclaimed by the Secretary of the Treasury, is conclusive upon custom-house officers and importers. No errors alleged to exist in the estimate, resulting from any cause, can be shown in a judicial proceeding to affect the rights of the government or individuals. There is no value, and can be none, in such coins, except as thus ascertained; and the duty of ascertaining and declaring their value, cast upon the Treasury Department, is the performance of an executive function requiring skill and the exercise of judgment and discretion which precludes judicial inquiry into the correctness of the decision. If any error in adopting a wrong standard, rule, or mode of computation, or in any other way, is alleged to have been committed, there is but one method of correction, that is, to appeal to the department itself. To permit judicial inquiry in any case is to open a matter for repeated decision, which the statute evidently intended should be annually settled by public authority; and there is not, as is assumed in the argument of the plaintiff in error, any such positive and peremptory rule of valuation prescribed in the statute as serves to limit the discretion of the Treasury Department in making its published estimate, or would enable a court to correct an alleged mistake or miscalculation. The whole subject is confided by the law exclusively to the jurisdiction of the executive officers charged with the duty, and their action cannot be otherwise questioned."

Section 2 of the Customs Administrative Act of June 10, 1890, c. 407, 26 Stat. 131, is a substantial reproduction of section 2838 of the Revised Statutes, in providing that all invoices of imported merchandise shall be made out in the currency of the place or country from whence the importations shall be made, or if purchased in that currency shall be a true statement of the amount actually paid therefor; and section 52 of the tariff act of October 1, 1890, c. 1244, 26 Stat. 567, is a reproduction of section 3564, with the exception that it provides that the value of standard coins of foreign countries

shall be estimated quarterly, instead of annually, by the Director of the Mint, and be proclaimed by the Secretary of the Treasury on the first day of January, April, July, and October of each year.

These provisions being substantially reënactments of former laws, must, upon well-settled principles, be interpreted in the light of the decisions already referred to, and the estimate of the Director of the Mint, as proclaimed by the Secretary of the Treasury, fixing the values of foreign coin or currency in terms of the money of account of the United States, must be held equally conclusive both upon the government and the importer as under the former statutes.

In accordance with the provisions of section 52 of the tariff act of 1890, after the Director of the Mint had made his estimate of the value of foreign coins, the Secretary of the Treasury on July 1, 1892, issued his proclamation as to the " values of coins in terms of money of account of the United States, to be followed in estimating the value of foreign merchandise exported to the United States on and after July 1, 1892, expressed in any such currencies." (Treas. Synopsis, 13,003.) That portion of the proclamation relating to Austria-Hungary gave the value of the gold florin at $0.482, and of the silver florin at $0.32 in terms of the United States gold dollar. In a foot-note to the proclamation is this statement: " Silver, the nominal standard; paper, the actual standard, the depreciation of which is measured by the gold standard."

Under and in pursuance of this proclamation of the Secretary of the Treasury, fixing the value of the Austria-Hungary silver and gold florins, and in the absence of a consular certificate as to the value of the paper florin, the question which was presented for the collector's action and decision was whether the paper florin of the invoices should be estimated on the basis of the value of the gold or the silver florin. The collector adopted the value of the gold florin as the proper standard, while the importer insisted that the value of the silver florin, as proclaimed, should have been adopted as the standard.

We are of opinion that the collector's action and ruling on the question was correct, for the reason that in the proclamation and the foot-note attached thereto, silver was stated to be only the nominal standard, while paper was the actual standard, the depreciation of which was to be measured by the gold standard. It was not shown, however, that the paper florin of the invoices was actually depreciated, as compared with the gold standard, and the value was properly taken as that of the gold florin, — the real standard with which it was to be compared, — gold having become, as stated in *The Collector* v. *Richards*, 23 Wall. 259, 260, the general medium of international exchange, while silver was regarded more as a domestic coin. The collector was not authorized to presume that the paper florin was so depreciated as to be reduced to the value of the silver florin, which under the proclamation of the Secretary of the Treasury was only referred to as the nominal standard. If there had been a consular certificate with the invoices, showing that the paper florin was simply and merely of the value of the silver florin, the claim of the importer would have had some foundation upon which to rest, but in the absence of such a certificate the collector was clearly authorized in assuming that the currency of the invoices was equal in value to that of the real standard, which was the gold florin.

Section 52 of the Customs Administrative Act provides that the value of the foreign coin, as expressed in the money of account of the United States, shall be that of the pure metal of the coin of standard value, and the proper construction of the proclamation, in the absence of a consular certificate as to the value of the paper florin, required the collector to adopt the gold florin as the pure metal and the better standard, rather than the value of the silver florin, which was referred to as only a " nominal standard."

This being the proper construction to be placed upon the proclamation of July 1, 1892, we are of opinion that the collector's action in adopting the value of the gold florin at the estimate fixed therein was not subject to review by the board of general appraisers, under the principle laid down in the

authorities already referred to. If the action of the collector was conclusive, certainly the Circuit Court of the United States had jurisdiction to pronounce the decision of the board reversing the collector's ruling null and void.

But suppose the collector's construction of the law and the proclamation imposed on the importer a greater amount of duties than he was properly chargeable with, and that he had a right, after protest, to have that question reviewed on appeal by the board of general appraisers, is the decision of that board, reversing the collector's action, conclusive on him and on the United States, whom he represents? On the assumption that an appeal did lie from the collector's action to the board of general appraisers, the question as to the jurisdiction of the Circuit Court to review the adverse action of the board must depend upon the proper construction to be placed on sections 13, 14, and 15 of the Customs Administrative Act of June 10, 1890.

The thirteenth section of the act relates solely to the appraisement of imported merchandise, and declares that the decision of the board of general appraisers "shall be final and conclusive as to the dutiable value of such merchandise," and directs the collector to ascertain, fix, and liquidate the amount of duties to be paid on such valuation.

Section 14 provides that the decision of the collector as to the "rate and *amount* of duties, . . . including all dutiable costs and charges, and as to all fees and exactions of whatever character, except duties on tonnage, shall be final and conclusive," unless the importer appeals to the board of general appraisers. This section clearly allows and provides for an appeal by the importer from the decision of the collector, as to both rate and amount of duties, as well as dutiable costs and charges, and as to all fees and exactions.

By section 15, so far as it relates to the matter in question, it is provided that "if the importer . . . or the collector . . . shall be dissatisfied with the decision of the board of general appraisers as provided for in section 14 of this act, as to the *construction of the law and the facts respecting the classification of such merchandise and the rate of duty imposed*

*thereon under such classification*, they, or either of them, may . . . apply to the Circuit Court . . . for a review of the questions of *law and fact* involved in such decision." This section further provides for certifying all the evidence taken before the general appraisers and their decision thereon, (and for the taking of further testimony,) which is made to constitute the record on which the Circuit Court is to hear and determine the questions of law and fact involved in the decision of the board of general appraisers. This section in express terms provides that the Circuit Court shall have jurisdiction to review, not merely questions of law and fact respecting the classification of imported merchandise and the rate of duty imposed thereon under such classification, but such right of review extends to the decision of the board upon all questions and matters in respect to which an appeal will lie thereto under the provisions of section 14. In other words, the right of review by the Circuit Court is coextensive with the right of appeal to the board as to all matters except the *dutiable value* of the imported merchandise, as to which the decision of the board of general appraisers is by section 13 made conclusive.

Now, by section 14 of the act, if the decision of the collector imposes an excessive amount of duties, under an improper construction of the law, the importer may take an appeal to the board of general appraisers, whose decision on such questions is not made conclusive as it is in respect to the *dutiable value* of the merchandise, and not being conclusive, it is subject to review under the express provisions of section 15.

The action of the collector in the present case did not relate either to the classification of the goods, or to the rate of duty imposed thereon, but, as conceded by counsel for the appellee, merely increased the amount of duties to be paid by the importer to the extent of the difference between $0.32, as the value of the silver florin, and $0.482, as the value of the gold florin, in the currency of account of the United States. This involved no dispute between the parties as to either classification or rate of duty; or the dutiable value of the imported merchandise. But it did involve the proper construction of

the law, as embodied in section 52 of the tariff act of 1890, and the estimate of the florin as made by the Director of the Mint, and as proclaimed by the Secretary of the Treasury on July 1, 1892, made in pursuance thereof.

Now, it is claimed on behalf of the appellee that the rule laid down in *In re Fassett*, 142 U. S. 479, 487, and in *Passavant* v. *United States*, 148 U. S. 214, sustains the action of the Circuit Court in declining to take jurisdiction for the purpose of reviewing the decision of the board of general appraisers in reversing the action of the collector.  There is nothing in *In re Fassett* even intimating that on the question here under consideration the Circuit Court has no jurisdiction to review the decision of the board of general appraisers.  It was said in that case that "the appeal provided for in section 15 brings up for review in court only the decision of the board of general appraisers as to the construction of the law, and the facts respecting classification of imported merchandise, and the rate of duty imposed thereon under such classification."  The question in that case was whether a British-built pleasure steamer yacht, purchased in England by a citizen of the United States, and entered at the port of New York, was liable to duty as an imported article.  The case did not in any way involve the question here under consideration.

In the subsequent case of *Passavant* v. *United States*, 145 U. S. 214, the only question presented for the consideration and determination of the court was whether the *dutiable value* of imported merchandise, as fixed and ascertained by the board of general appraisers, was subject to review in the Circuit Court.  It was held that it was not, for the reason that by section 13 of the act of June 10, 1890, the decision of the board of general appraisers was declared to be "final and conclusive" as to the dutiable value of such merchandise against all parties interested therein.  This clear and explicit language of the statute left no room for construction, and the decision in *Passavant* v. *United States* went only to the point of holding that the *dutiable value* of imported merchandise, as fixed by the board of general appraisers, was conclusive, and not subject to review by the Circuit Court.

Neither of these cases, in their facts nor in the principles on which they proceed, is directly in point or controlling of the present case.

Under a proper construction of sections 14 and 15 of the act of June 10, 1890, it cannot be held that the right of review by the Circuit Court is limited and confined, as contended by the appellee, to the two subjects of classification and the rate of duty. By section 14, the collector's decision on rate and amount of duties, including all dutiable costs and charges, and as to all fees and exactions of whatever character, (except duties on tonnage,) may be the subject of appeal to the board of general appraisers. The subjects of review by the Circuit Court, provided for by section 15, extend to all questions of law and fact in respect to which the board of general appraisers have appellate jurisdiction, except the decision of that board as to the dutiable value of merchandise, which is provided for by section 13, and is made conclusive against all parties interested.

We, therefore, are of opinion, first, that the collector's action in estimating the value of the florin was not the subject of appeal to and reversal by the board of general appraisers, and if it was not it was proper for the Circuit Court to so declare, and reverse the board; secondly, if the right of appeal to the board did exist, then the Circuit Court of the United States had undoubted jurisdiction to review that decision on the application of the collector.

*The action of the Circuit Court dismissing the bill for want of jurisdiction is accordingly reversed, and the cause remanded to be proceeded with in conformity with this opinion.*