### UNITED STATES v. BEEBE et al.

(Circuit Court, D. Massachusetts. September 4, 1902.)

#### No. 1,200.

1. CUSTOMS DUTIES—LIQUIDATION—VALUATION OF FOREIGN COINS.

In reducing foreign standard coins to United States currency for the assessment of duties, the basis in all cases is the value of the pure metal in such coins, and not their exchange value.

2. SAME—RELIQUIDATION.

This rule is not changed by the proviso to section 25 of the tariff act of 1894, which authorizes the secretary of the treasury to order a re-liquidation of any entry upon satisfactory evidence that the value in United States currency of the foreign money specified in the invoice was at the date of certification at least 10 per centum more or less than the value proclaimed during the quarter in which the consular certification occurred. The word "value," as used in such proviso, means the pure-metal value, and it confers no power upon the secretary to order a reliquidation of an entry on the basis of the exchange value of the coins specified in the invoice, as shown by the consular certificate, because such value varies more than 10 per centum from the proclaimed value for the quarter.

3. SAME—CONCLUSIVENESS OF RELIQUIDATION.

An order for reliquidation of an entry, made by the secretary of the treasury under the proviso of section 25 of the tariff act of 1894, upon evidence satisfactory to him, based on the required difference between the pure-metal value of the foreign money specified in the invoice and the proclaimed value, is conclusive, and the action of the collector thereunder is not reviewable by the board of general appraisers or the courts; but where the secretary acts under an erroneous construction of the statute, and beyond the scope of the authority conferred on him by the proviso, by adopting as the basis of the reliquidation the exchange value of the foreign coin, instead of the pure-metal value, whereby the duties are increased, the question arising upon such reliquidation is one of law, and not of fact, and upon seasonable protest by the importer the action of the collector is reviewable by the board of general appraisers and the courts, under sections 14 and 15 of the customs administrative act of 1890.

On petition by the United States for a review of the decision of the board of general appraisers in the matter of certain merchandise imported by Lucius Beebe & Sons into the port of Boston and Charlestown.

¶ 1. See Customs Duties, vol. 15, Cent. Dig. § 190.

Henry P. Moulton, U. S. Atty., and William H. Garland, Asst. U. S. Atty.

Whipple, Sears & Ogden, for Lucius Beebe & Sons.

COLT, Circuit Judge. This is a second petition for review, relating to the same entry of merchandise. The decisions of the circuit court of appeals and of the circuit court on the first petition are found in 45 C. C. A. 230, 106 Fed. 75, and 103 Fed. 785. While the specific questions now presented may differ in form, the principles which underlie and control both these petitions were carefully considered by this court in U. S. v. J. Allston Newhall & Co. (C. C.) 91 Fed. 525. That case involved the construction of section 25 of the tariff act of 1894, and especially the proviso thereof (28 Stat. 552); and this is true of both these petitions. In U. S. v. J. Allston Newhall & Co. this court said:

"This section, until we reach the proviso, is substantially a re-enactment of the previous law. The contention of the government rests upon the proposition that the word 'value' in the proviso is not limited to the value 'of the pure metal,' but extends to other methods of valuation, never before adopted with respect to specified foreign standard coins. To adopt this construction is to hold that congress intended to depart from the long-established rule, and to introduce a new and uncertain mode of valuation in cases coming within the terms of the proviso. The result is that the body of the section provides one way, and one way only, for estimating the value of foreign standard coins, while the proviso covers other ways in conflict with former well-settled principles. Certainly, the court should not adopt such a construction, if it be at all doubtful. To hold that, where the value of the foreign coin during the quarter varies less than ten per centum from the value proclaimed, the pure-metal value is to govern, and that when it exceeds ten per centum the secretary of the treasury may adopt any standard of valuation he sees fit, based upon rate of exchange, trade conditions, or financial reports, would result in the introduction of those elements of uncertainty and confusion which the law has aimed especially to prevent. The purpose of the proviso, in our opinion, was, not to change the principle in estimating the value of foreign coins, but rather to permit of a different estimate on the same principle, if it should appear at any time during the quarter that the proclaimed value was to a considerable degree at variance with the actual fact existing at the time of any given importation. While the standard of valuation should be fixed and based on intrinsic value, the whole legislation on this subject shows an effort on the part of congress to provide speedier means for correcting the valuation when it is shown to be wrong. Until 1873 any change in the valuation of specified foreign standard coin required a special enactment. By the statute of 1873 the proclaimed estimate must be made annually. By the statute of 1890 it must be promulgated quarterly. The proviso, in section 25 of the act of 1894, was simply another step in the same direction, and was intended to permit a new estimate of valuation at any time during the quarter, where there was found to be an error of at least ten per centum. This is the natural construction and evident intent of the whole section, and is in harmony with previous legislation. * * * The second question raised by the government under the assignment of errors is that the board of general appraisers had no jurisdiction to review the action of the collector in estimating the value in United States money of foreign coin. This case is not one of disputed appraisement of the value of imported merchandise, as to which the decision of the board of general appraisers is made final under section 13 of the customs administrative act of June 10, 1890. U. S. v. Klingenberg, 153 U. S. 93, 102, 14 Sup. Ct. 790, 38 L. Ed. 647; Hilton v. Merritt, 110 U. S. 97, 3 Sup. Ct. 548, 28 L. Ed. 83. The dutiable value in rupees of the merchandise in this case is admitted under the agreed statement of facts: the

only issue being whether this court or the board of general appraisers has jurisdiction to review the action of the collector in reducing to United States currency the value of the rupees. Such jurisdiction, if any, must be found in sections 14 and 15 of the act of June 10, 1890. The jurisdiction conferred upon the circuit court by section 15 is coextensive with the jurisdiction conferred on the board of general appraisers by section 14. This was so held by the supreme·court in the Klingenberg Case (153 U. S. 93, 14 Sup. Ct. 790, 38 L. Ed. 647) in the following words: "The subjects of review by the circuit court, provided for by section 15, extend to all questions of law and fact in respect to which the board of general appraisers have appellate jurisdiction, except the decision of that board as to the dutiable value of merchandise, which is provided for by section 13, and is made conclusive against all parties interested.' In construing section 14, the court says: 'By section 14 the collector's decision on rate and amount of duties, including all dutiable costs and charges, and as to all fees and exactions of whatever character (except duties on tonnage), may be the subject of appeal to the board of general appraisers.' The Klingenberg Case decided that, where the collector was simply called upon, under the statute, to follow the estimate of value made by the director of the mint and proclaimed by the secretary of the treasury, his action was not subject to review by the board of general appraisers. If, for example, in the present case, the collector had adopted the proclaimed rate for the rupee on January· 1, 1896, of $.233, his decision would have been final. This conclusion of the court was based upon the rule laid down in Collector v. Richards, Cramer v. Arthur, Hadden v. Merritt, ubi supra. These authorities show the absolute conclusiveness of the value estimated by the director of the mint and proclaimed by the secretary of the treasury of the standard coin of foreign countries. After holding that the collector's construction of the value as proclaimed was correct, the court said: 'This being the proper construction to be placed upon the proclamation of July 1, 1892, we are of the opinion that the collector's action in adopting the value of the gold florin at the estimate fixed therein was not subject to review by the board of general appraisers, under the principle laid down in the authorities already referred to.' All the Klingenberg Case decided was that, when the collector followed such proclaimed value, his action was not the subject of appeal under section 14. The present case is the reverse, for here the collector refused to be governed by the proclaimed value. * * * The question in this case has reference to the 'amount of duties,' and is, therefore, reviewable under sections 14 and 15 of the act of June 10, 1890, by the board of general appraisers and by the circuit court. The amount of duties liquidated at the proclaimed value of the rupee would have been less than the amount liquidated at the exchange value. The Klingenberg Case is not an authority upon the proposition that, where the collector declines to accept the proclaimed value of a foreign standard coin, and adopts another standard, thereby increasing the amount of duties upon imported merchandise, his action is not the subject of review, under the act of 1890. Our conclusion is that the board of general appraisers and this court have jurisdiction, and that the decision of the board reversing the action of the collector should be affirmed."

Following the conclusions in U. S. v. J. Allston, Newhall & Co., this court, on the first petition in the case at bar, held:

(1) In reducing foreign standard coins to United States currency for the assessment of duties, the basis in all cases is the value of the pure metal in such coins, and not their exchange value.

(2) This long-established rule was not changed by the proviso to section 25 of the tariff act of 1894 (28 Stat. 552), as to reliquidations, where it appeared that the value of the foreign money specified in an invoice had varied at the time of the invoice more than 10 per cent. from that proclaimed by the secretary of the treasury for that quarter.

(3) A collector is not authorized, because the consular certificate accompanying an invoice shows the current exchange value of the

money of the invoice to be more than 10 per cent. greater or less than the proclaimed value for the quarter, to depart from such proclaimed value, and adopt, for the assessment of duties, the exchange value shown by the certificate.

(4) The action of a collector in declining to accept the proclaimed value of a foreign standard coin, and in adopting another standard, thereby increasing the amount of duty on the imported merchandise, does not relate to a disputed appraisement, but to the amount of duties; and, under Customs Administrative Act June 10, 1890, §§ 14, 15, is reviewable, on the protest of the importer, by the board of general appraisers and the circuit court.

(5) The collector, in adopting the exchange value of the rupee as certified by the United States consul, and in not adopting the proclaimed value for the rupee, in liquidating the entry in question, acted illegally, and the board of general appraisers had jurisdiction to order a reliquidation at the proclaimed value.

(6) The decision of the board of general appraisers must be sustained unless it is shown that there has been a valid reliquidation of the entry in question under the authority conferred upon the secretary of the treasury by the proviso of section 25 of the tariff act of August 27, 1894.

(7) A valid reliquidation under this proviso is a reliquidation based upon the required difference between the pure metal value of the foreign coin and the proclaimed value, and is as conclusive as the proclaimed value under the preceding part of the section.

(8) The note appearing at the foot of the quarterly estimate of coin value on July 1, 1898, "The value of the rupee to be determined by consular certificate," gave no right, power, or authority to the collector to liquidate the entry in question at the value of the rupee stated by the United States acting consul in the certificates attached to the two invoices.

Upon further consideration, the court sees no reason to change or modify the views expressed or the conclusions reached in these opinions. On the former petition, concerning the entry under consideration, the importers contended: First, that there had been in fact no reliquidation of the entry; and, second, that the reliquidation of the entry on any other basis than that of the pure-metal value of the foreign coin was unauthorized. The circuit court considered both these propositions, and decided both questions in favor of the importers. On appeal the circuit court of appeals properly only considered the first question, and, having determined that there had been in fact no reliquidation, affirmed the judgment of the court below on that ground, but "without prejudice to the right of either party to proceed further, after a proper liquidation by the collector of customs at the port of Boston, in accordance with section 25 of the tariff act of August, 1894, including the proviso therein." After the decision of the circuit court of appeals, the collector liquidated the duties on the merchandise at the value of 19.9 cents for each rupee, in accordance with the proclaimed value of the rupee in pure metal, as set forth in the treasury circular of July 1, 1898. Thereupon the secretary of the treasury in

117 F.—43

formed the collector that "satisfactory evidence" had been produced to him "showing that the value in United States currency of the foreign money of the invoice, namely, the rupee of India, was 32.11 cents at the dates of certification, which is ten per centum more than the value proclaimed during the quarter in which the consular certification occured"; and in view of this fact he directed the collector "to reliquidate the entry hereinbefore mentioned on the basis of this latter value [32.11], under the authority conferred upon the secretary of the treasury by the proviso to section 25 of the act of August 27, 1894." The collector accordingly reliquidated the duty by taking the rupees of the invoice at the value of 32.11 cents each. By the agreed statement of facts it appears that this order for reliquidation was not based upon any difference between the pure-metal value of the rupee on August 11, 1898, and September 1, 1898, the dates, respectively, of the consular certificates of the invoices, and the proclaimed value for the quarter beginning July 1, 1898; that the pure-metal value of the rupee, in terms of United States gold dollars, on the dates of consular certification, was substantially 19.9 cents, being the value contained in the proclamation; and that the value of 32.11 cents was not intended to be the pure-metal value of the rupee on the dates of certification. The importers duly protested against this reliquidation, the board of general appraisers sustained the protest, and the United States has brought this petition for review in the circuit court.

In view of the decisions of this court, there is only one point now urged by the government which calls for serious consideration. It is contended that the action of the collector cannot be impeached, because the power vested in the secretary of the treasury, under the proviso of section 25 is absolute, and that his order for reliquidation, whether justified or not by the proper construction of the proviso, is not subject to judicial review. This argument is based on the ruling of the supreme court that the proclaimed value of foreign coins estimated by the director of the mint is final, and cannot be reviewed by the board of general appraisers or the courts, and the ruling of this court on the first petition for review in the present case, that a valid reliquidation under the proviso of section 25 is as conclusive as the proclaimed value under the preceding part of the section. Collector v. Richards, 23 Wall. 246, 257, 259, 23 L. Ed. 95; Cramer v. Arthur, 102 U. S. 612, 619, 620, 26 L. Ed. 259; Hadden v. Merritt, 115 U. S. 25, 27, 5 Sup. Ct. 1169, 29 L. Ed. 333; U. S. v. Klingenberg, 153 U. S. 93, 14 Sup. Ct. 790, 38 L. Ed. 647. To determine the weight and force of this argument, it is well to point out the issue before the supreme court in those cases, and the scope of the ruling on the question of conclusiveness.

In Collector v. Richards, the director of the mint, acting within the terms of the act of March 3, 1873, and in conformity with the powers conferred thereunder, estimated the pure-metal value of the franc of France at 19 cents and 3 mills, and this value was proclaimed by the secretary of the treasury on January 1, 1874. The court held that the act of March 3, 1873, repealed former acts relating to the value of the franc, and that the collector's action in following the proclaimed value was correct. In construing the act of 1873, which in this part is identi-

cal with section 25 of the act of 1894, Mr. Justice Bradley, speaking for the court, said:

"The important words of the first section are as follows: 'The value of foreign coin, as expressed in the money of the account of the United States, shall be that of the pure metal of such coin of standard value.' The plain meaning of this language is that the value of foreign coins in United States money shall be measured by the amount of pure metal contained therein when of standard value; that is, when of the weight and fineness required by the laws and regulations of the country where they are produced. * * * The true method of comparing their money of account with ours, when both are based on actual coin, is to compare the standard coins of the two countries in a perfect state, and to ascertain the actual amount of pure metal in each. This is the result at which congress seems to have arrived, and, as we think, wisely." 23 Wall. 257, 259, 23 L. Ed. 95.

Cramer v. Arthur also arose under the act of 1873. The director of the mint, in conformity with the statute and the method therein prescribed, estimated the values of foreign standard coins in United States money, and these values were duly proclaimed by the secretary of the treasury. The pure-metal value of the Austrian florin was fixed at 47.60 cents. The importer sought to go behind this value, and show a different value. This was refused on the ground that the proclaimed value was conclusive. In the opinion of the court Mr. Justice Bradley said:

"The plaintiff seeks to go behind this valuation, and to show that at the time of the purchase of the goods the value of the silver florin in Vienna, as quoted in the papers, and as exhibited by the actual rate of exchange, was less than 47.60 cents, namely, 45.60 cents, and that the value of the paper florin was 43.71 cents. This, we think, the plaintiff cannot be allowed to do. The proclamation of the secretary and the certificate of the consul must be regarded as conclusive. In the estimation of the value of foreign moneys for the purpose of assessing duties there must be an end to controversy somewhere. When congress fixes the value by a general statute, parties must abide by that. When it fixes the value through the agency of official instrumentalities, devised for the purpose of making a nearer approximation to the actual state of things, they must abide by the values so ascertained. If the currency is a standard one, based on coin, the secretary's proclamation fixes it; if it is a depreciated currency, the parties may have the benefit of a consular certificate. To go behind these, and allow an examination by affidavits in every case, would put the assessment of duties at sea. It would create utter confusion and uncertainty. * * * It is of the utmost consequence to the government, and it is, on the whole, most beneficial to importers, that the value of foreign moneys should be officially ascertained, and that they should be fixed by a uniform method or rule." 102 U. S. 619, 620, 26 L. Ed. 259.

Hadden v. Merritt likewise arose under the act of 1873. Here, also, the director of the mint had estimated the pure-metal values of foreign standard coins, which were duly proclaimed by the secretary of the treasury. The invoices of the merchandise were made out in Mexican dollars. It was held that the proclaimed value was conclusive upon custom-house officers and collectors, and could not be impeached by evidence showing that the director of the mint had made a mistake or miscalculation in his estimate by expressing the value of the Mexican dollar in the silver dollar of the United States, and not in the standard gold dollar. In that case Mr. Justice Matthews, speaking for the court, said:

"The value of foreign coins, as ascertained by the estimate of the director of the mint and proclaimed by the secretary of the treasury, is conclusive upon custom-house officers and importers. No errors alleged to exist in the estimate, resulting from any cause, can be shown in a judicial proceeding, to affect the rights of the government or individuals. There is no value, and can be none, in such coins, except as thus ascertained; and the duty of ascertaining and declaring their value, cast upon the treasury department, is the performance of an executive function, requiring skill and the exercise of judgment and discretion, which precludes judicial inquiry into the correctness of the decision. If any error in adopting a wrong standard, rule, or mode of computation, or in any other way, is alleged to have been committed, there is but one method of correction. That is to appeal to the department itself. To permit judicial inquiry in any case is to open a matter for repeated decision, which the statute evidently intended should be annually settled by public authority; and there is not, as is assumed in the argument of the plaintiff in error, any such positive and peremptory rule of valuation prescribed in the statute as serves to limit the discretion of the treasury department in making its published estimate, or would enable a court to correct an alleged mistake or miscalculation. The whole subject is confided by the law exclusively to the jurisdiction of the executive officers charged with the duty, and their action cannot be otherwise questioned." 115 U. S. 27, 28, 5 Sup. Ct. 1170, 29 L. Ed. 333.

U. S. v. Klingenberg arose after the passage of the customs administrative act of June 10, 1890 (26 Stat. 131). The director of the mint, in conformity with the act of 1873, had estimated the pure-metal value of foreign standard coins, and such values were duly proclaimed by the secretary of the treasury on July 1, 1892. In reducing the currency of the invoices into United States money, the collector estimated the florin at $0.482, which was the proclaimed value of the gold florin. The importer protested against this action, insisting that the collector should have adopted the silver florin as the standard value, it having been referred to in the proclamation as the "nominal standard." Having first determined that the proper construction of the proclamation required the collector to adopt the gold florin as the pure metal and better standard, rather than the silver florin, or "nominal standard," the court held that "the collector's action in adopting the value of the gold florin at the estimate fixed therein was not subject to review by the board of general appraisers, under the principle laid down in the authorities already referred to." 153 U. S. 100, 14 Sup. Ct. 793, 38 L. Ed. 647. These authorities were Collector, etc., v. Richards, and the other cases already discussed.

In all these cases it will be observed that the director of the mint, acting within the scope of the powers conferred by statute, made his estimates on the pure-metal basis. It is manifest, therefore, that the rule of conclusiveness laid down in these cases goes to this extent, and no further: Where the pure-metal values of foreign standard coins as provided by the statute have been estimated by the director of the mint and proclaimed by the secretary of the treasury, such values are conclusive, and cannot be impeached by evidence of mistake or miscalculation. In other words, the pure-metal estimate by the director of the mint, as a fact found, is final, and the collector's action in conformity with such finding is not subject to judicial review, either under the old law, where the importer brought suit against the

collector in the circuit court to recover the excess of duties paid, or under the customs administrative act of 1890, where an appeal is taken from the collector's decision to the board of general appraisers. Assuming the word "value" in the proviso of section 25 to mean "value in pure metal," as the court has already determined, the doctrine of conclusiveness applied to reliquidations goes to this extent, and no further: The order for reliquidation of an entry by the secretary of the treasury upon evidence satisfactory to him, based on the required difference between the pure-metal value of the foreign money specified in the invoice and the proclaimed value, is conclusive, and the action of the collector thereunder is not reviewable by the board of general appraisers or the courts.

But this is not the issue presented in the case at bar. The importers are not seeking to impeach the order for reliquidation by evidence that the secretary's finding of fact respecting the difference between the pure-metal value of the rupee and its proclaimed value at the date of the consular certifications was erroneous. There is no such question involved in the present case. On the contrary, it is stipulated that the order for reliquidation was not based upon any difference in metal values, and that the pure-metal value of the rupee on the dates specified was substantially the same as the proclaimed value. The case now presented raises no question of fact, but only questions of law. The fundamental inquiry has reference to the power of the secretary, under the proviso, to make the order in question; and this court having determined that the proviso does not authorize him to make such an order, the specific question under discussion is whether, under such circumstances, the order is unimpeachable. Is an order for reliquidation, founded upon a wrong interpretation of the statute, conclusive, and the collector's action thereunder not subject to review? Can the secretary choose any standard of value for the foreign coin he pleases,—as, for example, the exchange value,—and will such action be final, although it is outside of the authority and jurisdiction conferred upon him by the proviso? Can the secretary first adopt an illegal standard of value, and then make an order or finding based upon such illegal standard, which cannot be impeached? If the doctrine of conclusiveness goes to this extent, then the importer is no longer governed by the laws which congress enacts, but by the secretary's interpretation of them; and the result might be that under the form of reliquidation the pure-metal rule of value in the assessment of duties, which has prevailed since the origin of the government, may be to a large extent nullified. In Greely v. Thompson, 10 How. 225, 234, 13 L. Ed. 397, the supreme court said:

"The orders as well as the opinions of the head of the treasury department, expressed in either letters or circulars, are entitled to much respect, and will always be duly weighed by this court; but it is the laws which are to govern, rather than their opinions of them; and importers, in cases of doubt, are entitled to have their rights 'settled by the judicial exposition of those laws, rather than by the views of the department."

Alleged errors of judgment or of fact, or alleged mistakes or miscalculations, committed by a government officer when acting within

the authority conferred by law, are very different in principle from alleged errors springing from a misinterpretation of the law and the adoption of a principle which is contrary to law. The finding by the director of the mint of the pure-metal value of foreign coins, as authorized by section 25, or the finding by the secretary of the treasury of the requisite difference between the pure-metal value of a foreign coin and the proclaimed value, as authorized by the proviso, is a very different thing from the finding by the director of the mint of the exchange value of foreign coins, not authorized by section 25, or the finding by the secretary of the difference between the exchange value of a foreign coin and the proclaimed value, not authorized by the proviso. Suppose, for example, the director of the mint, in his estimate of July 1, 1898, in evidence in the present record, had said: "In pursuance of section 25 of the act of August 27, 1894, I present in the following table an estimate of the values of the standard coins of the nations of the world for the next quarter. These estimates are not, as heretofore, based on the pure-metal value of such coins, but on their exchange value, as certified by consular certificate. This estimate is in accordance with the provisions of section 25 as I interpret them." And suppose these exchange values had been duly proclaimed by the secretary of the treasury, "to be followed in estimating the value of all foreign merchandise exported to the United States on or after July 1, 1898, expressed in any of such metallic currencies." Can it be presumed for a moment that such proclaimed values would be binding and conclusive upon all importers of foreign merchandise? In such a case the director of the mint manifestly has transcended the powers conferred upon him by section 25, which declares "that the value of foreign coin * * * shall be that of the pure metal value." There is here a plain violation of the terms of the statute. The estimate has proceeded on a principle contrary to law. In attacking such an estimate the issue is simply one of law involving the power of the director of the mint under the statute. It is a question of illegal action, arising outside of authorized powers, and not of error or mistake committed within the scope of lawful authority. So in the case at bar, assuming the word "value" has the same signification in the proviso as in the body of the section, when the secretary ordered the reliquidation of the entry in question on a basis other than the pure-metal value of the rupee, or the difference between its pure-metal value and the proclaimed value, he exceeded the powers conferred by statute. He adopted an unauthorized standard of valuation. He proceeded on a wrong principle, contrary to law. The secretary of the treasury, the collector of customs, the commissioner of patents, the officers of the land department, and all officers of the government charged with official duties, must proceed according to law. Within the scope of their statutory powers their acts may be final and conclusive, but acts which are based upon a wrong construction of the statute, or which proceed from following a wrong principle, contrary to law, or which flow from an assumption of authority or jurisdiction not conferred by statute, have never been held to be conclusive and unimpeachable. Some of the authorities are reviewed

in the able opinion by Judge Somerville, speaking for the board of general appraisers, in the case at bar. The principle is so clear upon reason, and has been so often recognized, that it is unnecessary to refer to numerous cases. Under section 13 of the customs administrative act the decision of the board of general appraisers is made "final and conclusive as to the dutiable value" of imported merchandise. But in respect to such conclusiveness Mr. Chief Justice Fuller, speaking for the court, in U. S. v. Passavant, said:

"While the general rule is that the valuation is conclusive upon all parties, nevertheless the appraisement is subject to be impeached where the appraiser or collector has proceeded on a wrong principle, contrary to law, or has transcended the powers conferred by statute." 169 U. S. 16, 21, 18 Sup. Ct. 219, 42 L. Ed. 644.

In Robertson v. Frank Bros. Co., 132 U. S. 17, 24, 10 Sup. Ct. 5, 7, 33 L. Ed. 236, the court said:

"But it is contended that the act of the appraiser in making, or requiring to be made, the additional charges for transportation and labor, was final and conclusive, and cannot be made the subject of inquiry. It is undoubtedly the general rule that the valuation of merchandise made by the appraiser, unappealed from, to merchant appraisers, is conclusive. But whilst this is the general rule, it is subject to the qualification that if the appraiser proceed upon a wrong principle, contrary to law, and this be made to appear, his appraisement is not unimpeachable. This qualification applies to the acts of many other officials charged with duties of a similar character."

In Muser v. Magone, 155 U. S. 240, 247, 15 Sup. Ct. 77, 80, 39 L. Ed. 135, the court said:

"Yet, though the valuation is final, and not subject to review and change and reconstruction by the verdict of a jury, it is open to attack for want of power to make it; as where the appraisers are disqualified from acting, or have not examined the goods, or illegal items have been added independent of the value. The principle applied in such cases is analogous to that by which proceedings of a judicial nature are held invalid because of the absence of some strictly jurisdictional fact or facts essential to their validity."

In Shepley v. Cowan, 91 U. S. 330, 340, 23 L. Ed. 424, Mr. Justice Field, in the opinion of the court, when speaking of the decisions of the land office, said:

"The officers of the land department are specially designated by law to receive, consider, and pass upon proofs presented with respect to settlements upon the public lands, with a view to secure rights of pre-emption. If they err in the construction of the law applicable to any case, or if fraud is practiced upon them, or they themselves are chargeable with fraudulent practices, their rulings may be reviewed and annulled by the courts when a controversy arises between private parties founded upon their decisions; but, for mere errors of judgment upon the weight of evidence in a contested case before them the only remedy is by appeal from one officer to another of the department."

See, also, Butterworth v. Hoe, 112 U. S. 50, 5 Sup. Ct. 25, 28 L. Ed. 656; Johnson v. Towsley, 13 Wall. 72, 20 L. Ed. 485; Moore v. Robbins, 96 U. S. 530, 535, 24 L. Ed. 848; Catholic Bishop of Nesqually v. Gibbon, 158 U. S. 155, 15 Sup. Ct. 779, 39 L. Ed. 931; Railroad Co. v. Forsythe, 159 U. S. 46, 61, 15 Sup. Ct. 1020, 40 L. Ed. 71.

The point now taken for the first time by the government that the action of the collector is not a "decision" within the meaning of section 14 of the customs administrative act is untenable, because the

"ascertainment and liquidation of duties" is plainly a "decision" within the meaning of the section.

With respect to section 2652 of the Revised Statutes, it may be observed that, although the collector must carry into effect all instructions of the secretary of the treasury relative to the execution of the revenue laws, yet as to third persons the legality of the collector's action is open to judicial review. Greely v. Thompson, 10 How. 225, 234, 13 L. Ed. 397; Tracy v. Swartwout, 10 Pet. 80, 95, 9 L. Ed. 354.

In conclusion, it would seem that this whole controversy must turn on the true construction of the word "value" in the proviso. If the interpretation by the government be correct, and the word signifies exchange value, or any standard of value the secretary may adopt, then the order for reliquidation, and the action of the collector thereon, were legal, and conclusive on the importers. If, on the contrary, as we hold, the word "value" signifies pure-metal value, then the secretary's order for reliquidation was beyond the scope of his authority, and contrary to law, and the action of the collector was appealable to the board of general appraisers, and reviewable by this court, under sections 14 and 15 of the customs administrative act.

For these reasons the decision of the board of general appraisers must be affirmed. Decision affirmed.