STONE, Collector, v. WHITRIDGE, WHITE & CO.

(Circuit Court of Appeals. Fourth Circuit. March 14, 1904.)

No. 518.

1. CUSTOMS DUTIES—FOREIGN COINS—FLUCTUATION IN VALUE.
   . Section 25, Tariff Act Aug. 28, 1894, c. 349, 28 Stat. 552, prescribes that the value of foreign coins shall be estimated in money of the United States on the basis of the pure metal found therein, as estimated by the director of the mint and proclaimed by the Secretary of the Treasury, subject to the proviso "that the Secretary of the Treasury may order the liquidation of any entry at a different value whenever satisfactory evidence shall be produced to him showing that the value in United States currency of the foreign money specified in the invoice was at the date of certification at least ten per centum more or less than the value proclaimed during the quarter in which the consular certification occurred." *Held*, that the fluctuation to which this proviso has reference is that of the metallic value, and not of the exchange or commercial value.

2. SAME—LIQUIDATION BY ORDER OF SECRETARY OF THE TREASURY—REVIEW—JURISDICTION OF BOARD OF GENERAL APPRAISERS.
   Where, assuming to act under section 25, Tariff Act Aug. 28, 1894, c. 349, 28 Stat. 552, authorizing the Secretary of the Treasury to order the reliquidation of any entry on the basis of a value different from that

129 F.—3

estimated by the director of the mint when satisfied that there has been a fluctuation of at least 10 per cent. from the proclaimed value of the currency specified in the invoice, the secretary directs a collector of customs to reliquidate on the basis of the exchange or commercial value of a certain foreign coin, and not of the metallic value, *held*, that he goes beyond his authority, and that the action of the collector pursuant to such direction may be reviewed by the Board of General Appraisers and the courts, under sections 14 and 15, Customs Administrative Act June 10, 1890, c. 407, 26 Stat. 137, 138 [U. S. Comp. St. 1901, p. 1933].

3. SAME—BOARD OF GENERAL APPRAISERS—RELATIONS WITH TREASURY DEPARTMENT.

The Board of General Appraisers, acting within its jurisdiction, is an independent tribunal, empowered by law (sections 13, 14, Customs Administrative Act June 10, 1890, c. 407, 26 Stat. 136, 137 [U. S. Comp. St. 1901, pp. 1932, 1933]) to pass upon certain controversies between the government and the importer, and in this respect is not subordinate to the Treasury Department.

Appeal from the Circuit Court of the United States for the District of Maryland.

This appeal was brought by William F. Stone, collector of customs at the port of Baltimore, from an affirmance of a decision of the Board of General Appraisers (In re Whitridge, G. A. 5110—T. D. 23,632), which reversed the collector's assessment of duty on certain merchandise imported by Whitridge, White & Co.

John C. Rose, U. S. Atty. (Morris A. Soper, Asst. U. S. Atty., on the briefs), for appellant.

Albert Comstock and William R. Sears, for appellees.

Before SIMONTON, Circuit Judge, and BOYD and KELLER, District Judges.

BOYD, District Judge. The facts in this case are substantially as follows: Stone, the appellant, is collector of customs for the district and port of Baltimore, Md. In June, 1900, Whitridge, White & Co., the appellees, imported from India into the port of Baltimore a cargo of gunny bagging. The gunnies were purchased by the importers at Calcutta, and were invoiced in rupees, which is a silver coin of India. The Barrowmore, in which the gunnies were brought into this country, arrived in Baltimore on the 18th of June, 1900, and the goods were entered for consumption on that day. On the 11th of July, 1900, the collector at Baltimore liquidated the duty on the said goods by converting into United States gold dollars the rupees of the invoices at the rate of 32 cents for each rupee. To this liquidation the importers entered a protest in writing on the 16th day of July, 1900, and on the 29th of May, 1901, the collector, acting under instructions from the Secretary of the Treasury, reliquidated the duty on said goods by converting into United States gold dollars the rupees of the invoices at the rate of 20.7 cents for each rupee. That thereafter, on the 12th day of June, 1901, the collector again reliquidated the invoices, and placed the value of the rupee at 32 cents. This last action of the collector was in response to instructions from the Secretary of the Treasury, relative to these invoices, as follows:

"In this regard I have to inform you that satisfactory evidence has been produced, to the Secretary of the Treasury, showing that the value, in United

States currency, of the foreign money of the invoices, namely, the rupee of India, was 32 cents at the date of certification, which is ten per cent. more than the value proclaimed during the quarter in which the consular certification occurred. In view of the fact stated, you are hereby directed to reliquidate the entries hereinbefore mentioned, on the basis of this latter value, under the authority conferred upon the Secretary of the Treasury, by the proviso to section 25 of the act of August 28th, 1894."

To this reliquidation the appellees duly filed a protest in writing with the collector at Baltimore. The goods imported are dutiable at five-eighths of a cent a pound upon the weight as taken in the reliquidation of June 12, 1901, and in addition thereto at the rate of 15 per cent. of their dutiable value. It is admitted that the metallic value of the rupee on April 19, 1900, the date on which the invoices in this case were certified, was substantially 20.7 cents, and at no time between the 1st of April, 1900, and the 1st of July, 1900, did the metallic value of the rupee even approximate 32 cents. It is further admitted that the reliquidation made by the collector on the 12th of June, 1901, to which the importers objected, and which is the basis of this proceeding, in which the Indian rupee was valued at 32 cents, was the exchange value of the rupee at the date of the certification of the invoices, as shown and attested by the certificate of the United States consul general at Calcutta. On the 1st of April, 1900, acting under the authority of law, the director of the mint had estimated the metallic value of an Indian rupee to be 20.7 cents, and this valuation was duly proclaimed by the Secretary of the Treasury. The action of the Secretary of the Treasury in directing a reliquidation of the invoices upon which the present controversy arises was based upon an opinion of the secretary that, after the estimate of the director of the mint, and the proclamation thereon, the value of the Indian rupee during the quarter had varied as much as 10 per cent.; that its value had appreciated this much, or more, and that the invoices of the gunnies imported by the appellees should be reliquidated for duty at the exchange or commercial value of the Indian rupee, which was certified by the consul, and not at the metallic value, which had been estimated by the director of the mint. As before stated, against the reliquidation of June 12, 1901, made by the collector of Baltimore under the instructions of the Treasury Department, the appellees protested, and this protest, with the facts in the case, was submitted by the collector to the Board of General Appraisers at New York. This board rendered a decision adverse to the collector, declaring, in effect, that the metallic, and not the commercial, value of the Indian rupee at the time of the invoices was the true basis of liquidation. From this decision the case was brought by petition on behalf of the collector to the Circuit Court for the District of Maryland. The Circuit Court affirmed the decision of the Board of General Appraisers, and the collector appealed to this court.

The appellant lays down two propositions, namely, that the liquidation of June 12, 1901, was the decision of the Secretary of the Treasury, and was final, and that the Board of General Appraisers had no jurisdiction to review it. The question here is, therefore, can these positions, or either of them, be maintained? We think not. The Customs Administrative Act of June 10, 1890, c. 407, § 14, 26 Stat. 137 [U. S. Comp. St. 1901, p. 1933], plainly provides that, when the col-

lector of customs has liquidated invoices for duty the owner or importer may, after such liquidation, give notice in writing to the collector of his objections thereto, and, if the merchandise is entered for consumption, shall pay the full amount of the duties and charges ascertained to be due thereon; and upon such notice and payment the collector shall transmit the invoice, and all the papers and exhibits connected therewith, to the Board of three General Appraisers, which shall be on duty at the port of New York, etc., which board shall examine and decide the case thus submitted, and their decision, or that of a majority of them, shall be final and conclusive upon all persons interested therein. * * * Section 15 of said act provides for an appeal from the decision of the Board of General Appraisers to the Circuit Court of the United States on behalf of either party.

The appellant contends that the action submitted to the Board of General Appraisers was not that of the collector of customs at Baltimore, but was a decision of the Secretary of the Treasury, made in the discharge of the duties imposed upon him by law, and that the Board of General Appraisers has no authority in law to review him. It is insisted on the part of the appellant that Congress could not have intended to submit the decision of the Secretary of the Treasury, upon matters in which the statute imposes upon him the responsibility of deciding, to review, and possibly reversal, by subordinate divisions of his own department. We cannot agree that in exercising the powers of review vested in the Board of General Appraisers by law the board is a subordinate division of the Treasury Department. On the other hand, the members of the Board of General Appraisers are appointed by the President, by and with the advice and consent of the Senate, and, acting within its jurisdiction, the board is an independent tribunal, empowered by law to pass upon certain controversies between the government and the importer, and in this respect the board is no more subordinate to the Treasury Department than is any other court. As bearing upon this view, we may refer to the fact that by section 15 of the administrative customs act it is provided, among other things, that, if the Secretary of the Treasury is dissatisfied with the action of the board, his only relief is by appeal to the Circuit Court of the United States. It may be well at this juncture to give the full text of section 25 of the act of Congress of August 28, 1894, c. 349, 28 Stat. 552, upon the construction of which the questions involved in this case depend. That section reads as follows:

"That the value of foreign coin, as expressed in the money of account of the United States, shall be that of the pure metal of such coin of standard value, and the values of the standard coins in circulation of the various nations of the world, shall be estimated quarterly by the director of the mint, and be proclaimed by the Secretary of the Treasury immediately after the passage of this act, and thereafter quarterly on the first day of January, April, July and October, in each year, and the values so proclaimed shall be followed in estimating the value of all foreign merchandise exported to the United States during the quarter for which the value is proclaimed, and the date of the consular certification of any invoice shall, for the purposes of this section, be considered the date of exportation: provided, that the Secretary of the Treasury may order the liquidation of any entry at a different value whenever satisfactory evidence shall be produced to him showing that the value in United States currency of the foreign money specified in the invoice was, at the date of cer-

tification, at least ten per centum more or less than the value proclaimed during the quarter in which the consular certification occurred."

In disposing of the questions presented, and especially that in which it is insisted by the appellant that the reliquidation of June 12, 1901, was a decision of the Secretary of the Treasury, and therefore final, without power in the Board of General Appraisers or the courts to review it, it is perhaps as well to consider the reasons which must have led to the enactment of the law which we have just quoted, and by this method we may arrive at the true meaning of the legislation. We find that for many years in the administration of our tariff laws great difficulties had been encountered in so adjusting the value of goods purchased in foreign countries and invoiced in foreign money as to be altogether fair, in every instance, to the government and to the importer. Especially was this true of importations of goods which had been purchased in countries where silver coin was the standard money. This condition gave rise to disagreements between the government and the importers, and often the aid of the courts was invoked to relieve the situation. The Congress, no doubt appreciating existing conditions, undertook to set the matter at rest by the act of March 3, 1873, c. 268, 17 Stat. 602, by which it was enacted:

"That the value of foreign coin as expressed in the money of account of the United States shall be that of the pure metal of such coin of standard value, and the values of the standard coins in circulation of the various nations of the world shall be estimated annually by the director of the mint, and be proclaimed on the first day of January by the Secretary of the Treasury."

This act was plain, and there could be no doubtful construction of its terms. It provided that the metallic value of foreign coin should be estimated annually by the director of the mint, and proclaimed on the 1st day of January by the Secretary of the Treasury. When so estimated and proclaimed, the value of foreign coin for the purposes of liquidation of invoices of imported goods was settled, and had the force of a statute, which controlled the action of the collectors and other officers of the customs in determining import duties, and it was in view of this statute that the decisions in Hadden v. Merritt, 115 U. S. 25, 5 Sup. Ct. 1169, 29 L. Ed. 333, and The United States v. Klingenberg, 153 U. S. 93, 14 Sup. Ct. 790, 38 L. Ed. 647, were made, as was also the decision in Cramer v. Arthur, 102 U. S. 612, 26 L. Ed. 259, that the valuations of foreign standard coins made by the director of the mint and proclaimed by the Secretary of the Treasury were conclusive and binding both on collectors of customs and on importers, and that evidence to show that such valuations were inaccurate was not receivable. In the latter case the principle declared in Collector v. Richards, 23 Wall. 246, 23 L. Ed. 95, was cited and reaffirmed. These several decisions are upon the ground that the director of the mint, in basing his estimate upon the metallic value of foreign coin, had acted within the scope of the authority conferred upon him by the statute, and, having so acted, his finding of fact became the law as fully as if his estimate had been incorporated in the statute itself.

Section 25 of the act of August 28, 1894, excepting the proviso, was a substantial re-enactment of the law of 1873, the only change being that the director of the mint should make his estimates of the value

of foreign coin quarterly, instead of annually, as provided in the previous law. And then comes the proviso:

"That the Secretary of the Treasury may order the liquidation of any entry at a different value, whenever satisfactory evidence shall be produced to him, showing that the value in United States currency of the foreign money specified in the invoice was, at the date of the certification, at least ten per centum more or less than the value proclaimed during the quarter in which the consular certification occurred."

That frequent fluctuations in the metallic value of foreign coins led to the act of 1894 would seem to be indisputable. The law as it stood since 1873 empowered the director of the mint to make his estimate of the metallic value of foreign coin on the 1st day of January in each year, but Congress saw the necessity of having this estimate made quarterly, instead of annually, but still adhered to the metallic value as the basis of the estimate. Then where can we find a reason to conclude that it was the intention of Congress to make a departure from the metallic principle which permeated its legislation, and confer upon the Secretary of the Treasury an exclusive power to arbitrarily adopt another basis? Is it not more in accord with the language of the statute, the purposes for which it was enacted, the conditions it was intended to meet, and fair construction, to hold that the proviso was inserted in the act simply to authorize the Secretary of the Treasury, in case there should be a variation in the metallic value of the foreign coin after the director of the mint had made his estimate at the first of the quarter, and before, by the terms of the law, he could make another estimate at the beginning of the next quarter, to order liquidations when it was made satisfactorily to appear to him that such variations in the metallic value to the extent of 10 per centum had taken place? If such is not the law, then under the proviso to section 25 the Secretary of the Treasury is absolutely unrestrained. He is neither limited by the metallic value nor by the exchange value of the foreign coin, but he may, at his option, prescribe any value for foreign coin, and direct its use by officers of the customs in the invoicing of foreign goods for duty; and, following out the contention of the appellant in this case, the importer would have no remedy whatever, either through the Board of General Appraisers, or the courts. Certainly Congress did not intend to confer such unbridled power upon the head of an executive department.

This question is admirably discussed in two very learned opinions recently delivered, the one in the Circuit Court of the United States for the District of Massachusetts, in the case of The U. S. v. Beebe, 117 Fed. 670, and the other in the same case in the Circuit Court of Appeals for the First Circuit, 122 Fed. 762, 58 C. C. A. 562. It is not necessary for us to go further than to cite the opinions in these two cases, which we think declare the law as it is, and proceed upon a line of reasoning which leads irresistibly to the conclusion that, when the Secretary of the Treasury undertook to order a reliquidation of the foreign invoices for duty upon a basis other than the metallic value of the foreign coin in which such invoices were certified, he went beyond his authority, and his act had no legal effect.

We then come to the consideration of the question as to whether the decision of the Secretary of the Treasury and the subsequent ac-

tion of the collector of customs thereunder can be reviewed by the Board of General Appraisers and by the courts. We cannot put this question more forcibly than by quoting from the comprehensive opinion of Judge Colt in the Beebe Case, 117 Fed. 670, the following language:

"Can the secretary choose any standard of value for the foreign coin he pleases—as, for example, the exchange value—and will such action be final although it is outside of the authority and jurisdiction conferred upon him by the proviso? Can the secretary first adopt an illegal standard of value, and then make an order or finding based upon such illegal standard which cannot be impeached? If the doctrine of conclusiveness goes to this extent, then the importer is no longer governed by the laws which Congress enacts, but by the secretary's interpretation of them; and the result might be that under the form of reliquidation the pure metal rule of value in the assessment of duties, which has prevailed since the origin of the government, may to a large extent be nullified."

It is conceded that, if the ascertained metallic value of the silver rupee of India, either that made by the director of the mint at the first of the quarter and proclaimed by the secretary, or a metallic value determined by the secretary under the proviso of section 25, had been adopted by the collector, in making the reliquidation of invoices of the appellees' goods on the 12th of June, 1901, under the decisions before cited, such action by the collector would have been conclusive. But the collector did not do this. On the other hand, acting under instructions from the Secretary of the Treasury, he adopted as a basis of liquidation the commercial value of the rupee, as certified by the American consul at Calcutta, at the date of the invoices. The instruction was the act of the secretary, but the liquidation ascertaining the dutiable value of the goods and determining the amount of duty to be paid by the importer was the act of the collector. "The action of a collector in declining to accept the proclaimed value of a foreign standard coin and in adopting another standard, thereby increasing the amount of duty on imported merchandise, does not relate to a disputed appraisement, but to the amount of duties; and under Customs Administrative Act June 10, 1890, §§ 14, 15, is reviewable on the protest of the importer by the Board of General Appraisers and the Circuit Court." U. S. v. J. Allston Newhall & Co. (C. C.) 91 Fed. 525. In the present case the collector ignored the metallic value of the rupee— 20.7 cents—which had been proclaimed for the quarter in which the importation of the goods was made, and adopted the exchange value of 32 cents, which appeared from the certificate of the consul, and thus increased the amount of duty upon the importation. The principle declared in the Newhall Case, which we hold to be the law, applies here, and, in our opinion, the Board of General Appraisers and the Circuit Court of the United States had jurisdiction.

As bearing upon this point, and in entire accord with the position we take, we quote again from the learned opinion of the Circuit Court of Appeals for the First Circuit in the case of The United States v. Beebe & Sons, 122 Fed. 762, 58 C. C. A. 562, in which Judge Putnam, in delivering the opinion of the court, says:

"The United States raises a question of the jurisdiction of the Board of General Appraisers. On that point we need add but very little to what was said in the Circuit Court. The act of June 10, 1890, c. 407, 26 Stat. 131, is the

law which established this tribunal. The United States rests on the words 'decision of the collector,' found in section 14, and they claim that in the case at bar the 'decision' was not that of the collector of Boston, but of the Secretary of the Treasury. This is a narrow construction of the expression, because the ultimate tribunal which reliquidated was not the secretary, but the collector; so that at common law mandamus would lie only against the latter, and not against the former. This position, moreover, begs the question, because, if the action of the secretary was unlawful—as we hold it was—the collector could rest nothing done by him on that action, and whatever he did was his own."

The judgment of the Circuit Court is affirmed.