## McKESSON *v.* UNITED STATES (No. 117).[1]

1. CORRECTION OF THE RECORD.

   When there was ample time to inspect the record as made up and to apply to the Board of Appraisers for any supposedly needed correction therein prior to its transmission to this court and there was a failure, without any good cause shown, so to apply, the appellant may not here question the truth of that record.

2. BINOXIDE OF BARIUM.

   Binoxide of barium does not occur in a state of nature; it is not a clay or earth, wrought or unwrought; nor is it a mere mechanical mixture, but is an artificially produced chemical compound, differing essentially from the original material and was dutiable under paragraph 3, tariff act of 1897.

### United States Court of Customs Appeals, January 25, 1911.

TRANSFERRED from United States Circuit Court for Southern District of New York, Abstract 20183 (T. D. 29442).

[Affirmed.]

*Hatch & Clute* (*Walter F. Welch* of counsel) for appellant.

*D. Frank Lloyd,* Assistant Attorney General (*Charles D. Lawrence* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

SMITH, Judge, delivered the opinion of the court:

A quantity of binoxide of barium imported into the country at the port of New York was assessed by the collector of customs as a "chemical salt" at 25 per cent ad valorem under the provisions of paragraph 3 of the tariff act of 1897, which reads as follows:

3. Alkalies, alkaloids, distilled oils, essential oils, expressed oils, rendered oils, and all combinations of the foregoing and *all chemical compounds and salts* not specially provided for in this Act, twenty-five per centum ad valorem.

The importer protested that the importation was properly free of duty under paragraph 489 of the free list, which is as follows:

489. Baryta, carbonate of, or witherite,

or that it was dutiable at either 75 cents or $5.25 per ton under paragraph 44 thereof, which is as follows:

44. Baryta, sulphate of, or barytes, including barytes earth, unmanufactured, seventy-five cents per ton; manufactured, five dollars and twenty-five cents per ton,

or that it was dutiable at either $1 or $2 per ton under paragraph 93 of the act, the relevant and material parts of which are as follows:

93. Clays or earths, unwrought or unmanufactured, not specially provided for in this Act, one dollar per ton; wrought or manufactured, not specially provided for in this Act, two dollars per ton; * * *

or that it was subject to duty at 20 per cent ad valorem as a metallic mineral substance in a crude state under paragraph 183, which reads as follows:

183. Metallic mineral substances in a crude state, and metals unwrought, not specially provided for in this Act, twenty per centum ad valorem; monazite sand and thorite, six cents per pound.

[1] Reported in T. D. 31256 (20 Treas. Dec., 179).

The Board of General Appraisers sustained the collector, and the importers appealed to the United States Circuit Court for the Southern District of New York, which appeal was subsequently certified to this court for determination in accordance with the provisions of the tariff act of August 5, 1909. While the appeal was pending in the Circuit Court the appellants moved that the case be remanded to the board for correction of the record and testimony and the taking of further evidence on the issue of whether the importation was a chemical salt or compound, as found by the collector, or an earth wrought or manufactured, as claimed by the importers. The motion was denied by the Circuit Court and is renewed here.

The affidavits submitted in support of the motion do not positively assail the correctness of the record, and there is in them no positive or direct statement that the record does not truly and accurately reproduce the questions propounded to witnesses and the answers which they actually gave. The statement in the affidavit by appellants' attorney that he did not recollect propounding certain questions in the form stated in the transcript, and that a reference to carbonate of barium contained therein is unintelligible to himself and one of the witnesses, is hardly sufficiently positive or definite in form to justify a finding that the record does not set out the proceedings just as they occurred, especially as we must presume that the Board of General Appraisers certified to a correct record and performed the duty imposed upon it by law. But even if the affidavits were of a more positive and definite character, we should have some reserve in granting the relief requested. There was ample time to read the record after it had been made and to apply to the board for a correction thereof before it was forwarded. Having failed to do so, and no good cause appearing for not having done so, the appellants are not in a position to complain if at this late day they are not permitted to question its accuracy.

Appellants were aware of the nature and character of the testimony of the witness Gane as soon as it was given, and any application to permit him to modify, change, correct, or explain his testimony should have been made to the Board of General Appraisers either by direct motion or on motion for a rehearing before it lost jurisdiction by returning the record to the circuit court on appeal. No such application having been made to the board, this court would not be warranted in reopening the case to achieve an end which might have been accomplished had the appellants promptly and diligently availed themselves of a procedure adequate to the purpose.

*Motion denied.*

In passing it may be said, however, that even if the correction and change of testimony suggested were made they would not alter the decision which we have reached.

Binoxide of barium ($BaO_2$) is evolved by artificial processes from natural substances of which barium is a constituent element, particularly from carbonate of barium ($BaCO_3$), the chemical components of which are barium (Ba) and carbonic acid ($CO_3$). The carbonate is an earthy deposit found in various parts of the world and is commonly known as witherite. To produce binoxide of barium ($BaO_2$) the crude witherite ($BaCO_3$), generally mixed with carbon, is exposed to a very high temperature. This decomposes the carbonic acid of the witherite into one atom of oxygen, which is taken up by the barium and carbonic dioxide ($CO_2$), which is given off in the form of gas, leaving as the net result of the operation barium oxide or baryta (BaO), a chemical union of barium and oxygen in the proportion of one atom of barium to one atom of oxygen. The barium oxide or baryta is then exposed at a temperature of 450° to a current of air free of carbonic acid and takes up an additional atom of oxygen, forming the product variously known as binoxide of barium, barium dioxide, and barium peroxide ($BaO_2$), the article under discussion. Baryta (BaO) and binoxide of barium ($BaO_2$) are different substances, having different uses, and each of them is different from the natural substance, witherite, from which both of them may be developed by proper chemical manipulation.

So far as the evidence shows and an examination of scientific works discloses, the binoxide of barium does not occur in a state of nature. It is the result purely of artificial processes, and is one of the numerous creations of the chemical laboratory and of modern chemical science. It can not, therefore, be classed as a clay or earth wrought or unwrought, manufactured or unmanufactured, within the meaning of paragraph 93. That paragraph refers to certain natural substances, and to come within its provisions the clay or earth must continue to be a clay or earth. When the clay or earth is destroyed as the result of chemical decomposition and its freed chemical components form new chemical combinations, or remain free, the new substances so brought into existence are not and can not be classed as clays or earths. Witherite when burned at a high temperature ceases to be witherite and is resolved into two entirely new substances—oxide of barium, which remains in the crucible, and carbonic dioxide, which floats off as gas. Barium binoxide is a manufacture *from* clay or earth; it is not a clay or earth manufactured.

To say that it is a clay or earth because it was finally produced from such material is no more reasonable than to say that radium, one of the most notable achievements of chemical science, is pitchblende because it is made from pitchblende. Barium binoxide can not be classed as baryte or barytes earth for the reason that baryte or barytes earth is a sulphate of barium ($BaSO_4$), another substance altogether and a natural product just as is witherite. That it is not

a metallic mineral substance in a crude state is evident, and indeed no claim that it is a metallic mineral substance is seriously urged by the appellants.  Binoxide of barium is not a mere mechanical mixture of barium and oxygen.  Admittedly it is the product of a true chemical reaction artific ally produced which first decomposes the original witherite and finally effects a chemical combination between barium and oxygen, in which combination the identity of both chemical elements as separate entities is entirely lost and from which is derived an entirely new substance differing radically from its components and the original material out of which it was created.   Such a substance so evolved is clearly a chemical compound.   It was therefore properly assessed for duty under paragraph 3 of the tariff act of 1897.

The decision of the Board of General Appraisers is *affirmed*.