UNITED STATES *v.* JAMES G. KITCHEN & Co. (No. 3195)[1]

[1] T. D. 43688.

United States Court of Customs and Patent Appeals, November 4, 1929

*Charles D. Lawrence*, Assistant Attorney General (*Hugo P. Geisler* and *Fred J. Carter*, special attorneys, of counsel), for the United States.
*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument October 10, 1929, by Mr. Carter and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal by the Government from a judgment of the United States Customs Court.

Merchandise, consisting of 36 bales of mixed wool, was assessed for duty by the collector as wool in the grease at 31 cents per pound of clean content under paragraph 1102 of the Tariff Act of 1922, which reads as follows:

PAR. 1102. Wools, not specially provided for, and hair of the Angora goat, Cashmere goat, alpaca, and other like animals, imported in the grease or washed, 31 cents per pound of clean content; imported in the scoured state, 31 cents per pound; imported on the skin, 30 cents per pound of clean content.

The importer protested this assessment claiming that the wool was one of the kinds provided for in paragraph 1101 of the Tariff Act of 1922, and that it was dutiable thereunder at either 12 cents or 18 cents per pound. The paragraph reads as follows:

PAR. 1101. Wools, not improved by the admixture of merino or English blood, such as Donskoi, native Smyrna, native South American, Cordova, Valparaiso, and other wools of like character or description, and hair of the camel, in the grease, 12 cents per pound; washed, 18 cents per pound; scoured, 24 cents per pound. The duty on such wools imported on the skin shall be 11 cents per pound: *Provided*, That such wools may be imported under bond in an amount to be fixed by the Secretary of the Treasury and under such regulations as he shall prescribe; and if within three years from the date of importation or withdrawal from bonded warehouse satisfactory proof is furnished that the wools have been used in the manufacture of rugs, carpets, or any other floor coverings, the duties shall be remitted or refunded: *Provided further*, That if any such wools imported under bond as above described are used in the manufacture of articles other than rugs, carpets, or any other floor coverings, there shall be levied, collected, and paid on any wools so used in violation of the bond, in addition to the regular duties provided by this paragraph, 20 cents per pound, which shall not be remitted or refunded on exportation of the articles or for any other reason. Wools in the grease shall be considered such as shall have been shorn from the sheep without any cleansing; that is, in their natural condition. Washed wools shall be considered such as have been washed with water only on the sheep's back, or on the skin.

On the trial below considerable evidence was submitted by the parties. It appears therefrom that a majority of the bales contained mixed wools. The witnesses for the importer, while not in agreement as to the proportions, testified, collectively, that the bales contained from 3 to 10 per centum of pure English wool and from 90 to 97 per centum of Scotch black-faced wool known, because it is pulled wool, as "Scotch haslock"; that the wool is used for the making of carpet yarns; and that it would be commercially impracticable to segregate the pure English wool from the "Scotch haslock."

A. H. Harjes, jr., testifying for the importer, said that the mixture of the pure English wool with the "Scotch haslock" improved the wool, but did not make it any better for carpet purposes. With reference to the question of how the pure wool happened to be mixed with the "Scotch haslock," he said:

The WITNESS. Of course, your honor, as I may explain, this is the pulled wool that comes from the animal in Scotland. It may be it had a fine fleece which was put on.
Justice BROWN. That happens in the usual course of events?
The WITNESS. Yes; it would.

The witness, John W. Bulwer, testifying for the importer, said that the mixture of the pure English wool with the "Scotch haslock" would not "affect the buying or selling of it."

Another of the importer's witnesses, C. E. Webb, testified that importations of "Scotch haslock" wool frequently contained small percentages of pure English wool; that such wools were used for making carpet yarn; and that the presence of a small percentage of pure English wool did not improve the wool for carpet purposes.

All of these witnesses agreed that the mixing of the pure wool, either intentionally or unintentionally, with the "Scotch haslock" did not make the mixed wool any better than "Donskoi, native Smyrna, native South American, Cordova, or Valparaiso * * * wools" eo nomine provided for in paragraph 1101, and that the involved mixed wool is inferior in grade and quality to that before this court in the case of United States v. Bigelow-Hartford Carpet Co., 15 Ct. Cust. Appls. 74, T. D. 42156.

Counsel for the importer also inquired of these witnesses whether the involved wool "was improved by the admixture of merino or English blood." The testimony in this regard is very confusing, but we think that the witnesses intended to say that the imported wool was not "improved by the admixture of merino or English blood," within the meaning of that language as used in paragraph 1101, supra.

The Government called but one witness, H. V. Staley, who testified that he was the examiner of merchandise at the port of Philadelphia; that he had examined approximately 20 of the 36 bales in the importa-

tion; that a majority of the 20 bales examined by him contained about 15 per centum of pure English wool and 85 per centum of "Scotch haslock" wool; and that 9 of the bales were not examined by him because they had been removed from the warehouse by the importer. He did not explain why he failed to examine the other 5 or 6 bales, nor did he offer any explanation as to why he advisorily classified all as containing mixed wool when, as a matter of fact, he knew that only a majority of those examined contained wool of that character.

Upon this record the court below sustained the protest and, in so doing, in an opinion by McClelland, Justice, said:

There is a clear preponderance of evidence which establishes·that there is a small percentage of fine wool found in the sample (Exhibit 1) indicating a proportionate infusion of English blood; but, aside from the official examiner who passed the wool, the witnesses, four in number, were unitedly of the opinion that the small percentages of improved wool found by them neither increased the value of the wool as a whole, changed its character, nor enlarged its use beyond that of making carpets.

It is contended by the Government that, as the importation consists of a mixture of pure English wool, provided for in paragraph 1102, and "Scotch haslock," provided for in paragraph 1101, the entire importation is dutiable at the rate applicable to the pure English wool. It is claimed that this is so by virtue of the provisions of paragraph 1103 of the Tariff Act of 1922, which reads as follows:

PAR. 1103. If any bale or package containing wools, hairs, wool wastes, or wool waste material, subject to different rates of duty, be entered at any rate or rates lower than applicable, the highest rate applicable to any part shall apply to the entire contents of such bale or package.

Counsel for the importer contends that the imported wool is used for no other purpose than the making of carpet yarns; that it is no more valuable for such purpose than "Scotch haslock"; and that, as the imported mixed wool is of less value, as shown by the testimony, than the wool before this court in the *Bigelow-Hartford Carpet Co.* case, *supra*, it ought not to bear any higher duty than the so-called carpet wools provided for in paragraph 1101. It is further contended that paragraph 1103, *supra*, was not called to the attention of the court below and that, therefore, under the rule announced in the following cases the provisions of that paragraph should not be considered nor applied by this court: *United States* v. *Morris European & American Express Co.*, 3 Ct. Cust. Appls. 146, 150–151, T. D. 32386; *United States* v. *Fuld*, 4 Ct. Cust. Appls. 234, 235, T. D. 33476; *United States* v. *Brown Durrell & Co.*, C. C. A., First Circuit, 127 Fed. 793, 796, 798; *Bradstreet* v. *Thomas*, 12 Peters (37 U. S.) 59; *United States* v. *Tappenbeck*, 7 Ct. Cust. Appls. 17, T. D. 36258; *United States* v. *Gluck & Sons*, 8 Ct. Cust. Appls. 11, T. D. 37160; *McKesson* v. *United States*, 1 Ct. Cust. Appls. 213, T. D. 31256.

In the *Bigelow-Hartford Carpet Co.*, case, *supra*, this court had before it wool known as "B. A. 6's." The precise question before the court called for a construction of the language "wools, not improved by the admixture of merino or English blood," contained in paragraph 1101. In this connection, we said:

> The language of the statute is "wools, not improved by merino or English blood," the meaning of which is too plain to require much interpretation. To improve wool within paragraph 1101 means to raise its quality by crossing the sheep producing it with a superior breed, such as the merino or sheep of English blood. So long as the progeny, direct or remote, of such cross produces as the result thereof a better quality of wool than that produced before the cross by the inferior breed, it is wool improved by such admixture of superior blood. When that result ceases, the wool is no longer improved.

We are at a loss to understand how this decision has any bearing upon the issues in the case at bar. It is not claimed by the Government that the involved wool is "improved by the admixture of merino or English blood"; on the contrary, it is contended that the importation consists of a mixture of pure English and "Scotch haslock" wools, and that, as these wools are subject to different rates of duty, the entire importation must pay the highest rate applicable to either, in accordance with the provisions of paragraph 1103, *supra*.

The sole question before the court is whether or not the provisions of paragraph 1103 are applicable to the merchandise before us. The paragraph provides "that if any bale or package containing wools, * * * subject to different rates of duty, be entered at any rate or rates lower than applicable, the highest rate applicable to any part shall apply to the entire contents of such bale or package." The provisions are not ambiguous. They have special reference to bales or packages containing wools subject to different rates of duty. If a bale or package contains such mixed wools, the highest rate applicable to any of such wools shall apply to the entire contents of the bale or package, when the entered rate or rates are lower than those applicable. There is nothing to indicate that the Congress intended to restrict the operation of the paragraph to improved wools. The mere fact that the mixed wool is of no greater value for carpet purposes than "Scotch haslock" does not affect the situation. The imported bales contained wools subject to different rates of duty. The importer entered all of the wool at the rate applicable only to the so-called "Scotch haslock." As this rate of duty is lower than that applicable to the pure English wool, the entire importation is dutiable, by virtue of the provisions of paragraph 1103, at the higher rate provided in paragraph 1102. See *Downing Co.* v. *United States*, 12 Ct. Cust. Appls. 391, T. D. 40582; *United States* v. *Thomas & Co.*, 15 Ct. Cust. Appls. 295, T. D. 42473.

We are not impressed with the argument that because the provisions of paragraph 1103 were not called to the attention of the court

below they can not be considered in the determination of the issues in this court. The cases cited by counsel are not in point.

It appears from the record that some of the bales in the importation contained nothing but the unimproved "Scotch haslock" wool. It was the duty of the examiner of merchandise to return this wool for duty at the proper rate under paragraph 1101. He did not do so. If there was any proper reason for assessing this wool at the higher rate under paragraph 1102 it does not appear in the record.

If we were in a position to do so, we would grant the importer proper relief. Unfortunately, there is nothing in the record from which we may determine the number of bales of wool upon which duty was unlawfully assessed.

The judgment is *reversed.*