UNITED STATES v. BROWN, DURRELL & CO.*

(Circuit Court of Appeals, First Circuit. November 19, 1903.)

No. 485.

**1. CUSTOMS DUTIES—BOARD OF GENERAL APPRAISERS—JURISDICTION.**

The Board of General Appraisers, under the authority given in section 14, Customs Administrative Act June 10, 1890, c. 407, 26 Stat. 137 [U. S. Comp. St. 1901, p. 1933], to "examine and decide the case" submitted to it by a collector of customs, is required first of all to determine its jurisdiction, including the validity of the protest.

**2. SAME—APPEAL—GENERAL ASSIGNMENTS OF ERROR.**

On an appeal from a decision of the Board of General Appraisers, a statement of 21 errors was made, 19 of them relating to the merits, while the last 2 were general, alleging only that the "board erred as a matter of law." *Held,* that these 2 assignments should be construed with reference to the preceding 19, and not as raising the question of the validity of the protest on which the proceedings before the board were based; *held,* also, that statements so general in form are not in compliance with the requirements for appeals under section 15, Customs Administrative Act June 10, 1890, c. 407, 26 Stat. 138 [U. S. Comp. St. 1901, p. 1933], wherein "a concise statement of the errors of law and fact complained of" is prescribed.

**3. SAME—WAIVER—JURISDICTION.**

On appeal by the United States from a decision of the Board of General Appraisers, which reversed the assessment of duty by a collector of customs, where no statement of error was made by the appellant in regard to the sufficiency of the protest on which the proceedings before said board were based, *held,* that this fact constituted a waiver by the United States of an alleged defect in the protest.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

For former opinion, affirming a decision of the Board of General Appraisers, which reversed the assessment of duty by the collector of customs at the port of Boston, see 121 Fed. 605.

Henry P. Moulton, U. S. Atty., and William H. Garland, Asst. U. S. Atty.

W. Wickham Smith, for appellees.

Before COLT and PUTNAM, Circuit Judges, and BROWN, District Judge.

PUTNAM, Circuit Judge. This appeal relates to an importation made at the port of Boston in 1891, consisting of several cases of hemstitched handkerchiefs, each with an embroidered initial. The collector classified them for duty as "embroidered and hemstitched handkerchiefs." The importers protested, and, in their first protest, specified certain cases. Subsequently they made an additional protest, specifying those now involved. That was filed on January 18, 1894, and the importers claimed it was in season, on the ground that there was a reliquidation on January 16, 1894. The printed volume submitted to us contains what is entitled "Findings of Fact and Opinion of the

* Rehearing denied January 7, 1904.

Court," meaning thereby the Circuit Court; but, so far from being certified as a part of the record, this paper is merely certified as an opinion. However, the parties have treated it as a part of the record. This states that the judge found "as a matter of fact" that the cases now in question "were a subject of reconsideration by the collector under the reliquidation proceedings." It also states that the "importers filed a protest within ten days after the liquidation." We may say, in passing, that the United States maintain that this finding, although stated by the court as one of fact, was in truth a finding of law. In support of this proposition the United States rely on an agreed statement of facts which states that on January 16, 1894, duties were reliquidated with reference to other cases in the same invoice, but that no change was then made in the assessment of duty on those now in issue.

The protest was duly forwarded by the collector to the Board of General Appraisers with the other essential papers, his letter communicating them closing with a statement that the protest had not been filed within the time required by law. The decision of this board, as found in the record, sustains the importers as to the classification, but makes no reference to any question as to the time of protest. Its decision bears date on March 10, 1896. It refers to United States v. Harden, 68 Fed. 182, 15 C. C. A. 358, decided by the Circuit Court of Appeals for the Second Circuit on May 28, 1895, which was after the protest was filed and before the decision was made. United States v. Harden held the classification in question favorably to the importers. This case was followed by the Circuit Court of Appeals for the Third Circuit on November 3, 1897, in United States v. Jonas, 83 Fed. 167, 27 C. C. A. 500. Notwithstanding United States v. Harden, the United States, on April 2, 1896, applied in the present case to the Circuit Court for a review of the decision of the Board of Appraisers, resting the application, as we shall see, entirely on the merits, that is, entirely on the question of classification. Subsequent to this application came United States v. Jonas, and, apparently thereafter, the United States concluded to abandon their position as to the classification of the imported merchandise, and to rest in the Circuit Court wholly on the ground that the protest now before us was not seasonable. The Circuit Court decided this point against the United States, whereupon this appeal was taken, no errors being assigned except with reference thereto.

These proceedings are in accordance with sections 14 and 15 of the act ordinarily called the "Administrative Act," approved on June 10, 1890, 26 Stat. 131, 137, 138, c. 407 [U. S. Comp. St. 1901, p. 1933]. Section 14 provides "that the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise" shall be final "unless the owner," etc., shall, "within ten days," "give notice in writing to the collector," that notice being what is ordinarily spoken of as a "protest." The section then provides for transmitting to the Board of General Appraisers the invoice, "and all the papers and exhibits connected therewith," "which board shall examine and decide the case thus submitted." Section 15 provides that "if the owner," etc., "or the collector, or the Secretary of the Treasury, shall be dissatisfied with the decision of the Board of General Appraisers" as to the construction of the law, and the facts respecting the classification of the mer-

chandise and the rate of duty imposed thereon under such classification, they, or either of them, may apply to the Circuit Court for a review of the questions of law and fact involved in such decision. The section continues: "Such application shall be made by filing in the office of the clerk of said Circuit Court a concise statement of the errors of law and fact complained of." It then goes on to give further directions as to procedure, and provides that the Circuit Court shall "proceed to hear and determine the questions of law and fact involved in such decision respecting the classification of such merchandise, and the rate of duty imposed thereon under such classification."

Referring to the portions of section 15 which require that the application to the Circuit Court shall include a concise statement of the errors of law and fact complained of, the United States assigned 21 alleged errors. Nineteen of these contained specific statements; but they related to the question of classification, and they made no reference to the matter of the time of protest. Alleged errors 20 and 21 were as follows:

"(20) That said board erred as a matter of law in reversing the decision of the collector.

"(21) That the said board erred as a matter of law in not sustaining the decision of the collector."

Therefore the application of the United States to the Circuit Court did not raise the only question now submitted to us, unless it was under paragraphs 20 and 21. Aside from the ordinary rules with reference to assignments of error, which we will state, a fair construction of such general language, accompanied with the previous 19 assignments, would apply the maxim noscitur a sociis, and thus limit them by those which precede; but it is plain that paragraphs 20 and 21 fail to comply with the statute, and are void. The rules applicable in this respect to section 15 of the act of June 10, 1890, are necessarily the same in substance as those applicable to assignments of error when proceedings are taken in an appellate federal tribunal to reverse a judgment of a court below. It is true there may possibly be instances where, on account of the judgment of the court below being peremptorily in favor of the defendant, without reciting in the record any reasons therefor, it becomes impracticable for the plaintiff to assign specific grounds of error; but except in such extreme cases, with which that at bar clearly does not group, a general assignment, like paragraphs 20 and 21, is always condemned. There are also exceptions when the record itself discloses a "plain error," the disregarding of which would do substantial injustice. This case, however, is not of that class. As well said by the learned judge who heard it in the Circuit Court, it is now conceded that the merchandise in question was subjected by the collector to an unlawful rate of duty; and, as the learned judge further said, the United States hold money which the statute does not authorize. The case is rested by the United States on a purely technical point, which was an afterthought; so that they must be judged by the same rule with which they ask us to judge, and stand to the letter of the law.

On the part of the United States there has been a complete waiver of the question now in issue, so far as there can be a waiver in legal proceedings; yet the importers have not, from what we can draw from

the record, yielded the proposition which they now make. They always maintained that the protest was seasonable, and there is nothing in the record to show that they ever waived in the Circuit Court the point that no question as to the protest could be taken under any of the paragraphs 1 to 21 of the appeal to that court. There is no contention on the part of the United States that they ever yielded it. On the other hand, the United States rest their case in this respect entirely on the claim that the lack of a proper protest goes to a question of jurisdiction, of which a court must take notice of its own motion.

It is not necessary to go into the decisions of the Supreme Court and of the various Circuit Courts of Appeals with reference to the requirements concerning assignments of error. They have been uniform to the effect that, except in the extreme cases which we have spoken of, a general statement like paragraphs 20 and 21 is entirely insufficient. Indeed, on this topic we may say that the conclusion that these paragraphs are not sufficient follows inevitably, because to accept them otherwise would be to direct the striking from section 15 of the requirement of any statement of the errors of law and fact complained of, concise or otherwise. If this portion of section 15 requires nothing except what is found in paragraphs 20 and 21, it indeed requires nothing.

Looking, therefore, at the facts that there is nothing to indicate that the United States made any claim before the Board of General Appraisers as to the topic which they now urge on us, that the Board of General Appraisers sustained the position of the importers on the merits of the case, that the United States appealed from that decision to the Circuit Court, with no statement of errors except relating to the merits, we would be justified in concluding that all questions as to the time of protest were intentionally waived. However this may be, no such question was properly brought before the Circuit Court.

But, as we have already said, the United States claim that, inasmuch as the protest was not seasonably filed, the Board of General Appraisers had no jurisdiction over the subject-matter of classification; and that, as the basis of the appeal to the Circuit Court was the proceeding before the board, it follows that, the board having no jurisdiction, the Circuit Court had none, and that we are bound to take notice thereof. Exactly what judgment we should enter if we agreed with the United States in this line of conclusions has not been made clear to us.

There are undoubtedly classes of cases where the entire subject-matter is so clearly without the range of the jurisdiction of the Board of General Appraisers that their proceedings with reference thereto would be of no effect. With the rest is In re Fassett, 142 U. S. 479, 12 Sup. Ct. 295, 35 L. Ed. 1087, where was involved the question whether a yacht is an imported article; and De Lima v. Bidwell, 182 U. S. 1, 175, 21 Sup. Ct. 743, 45 L. Ed. 1041, where it was held that whether goods brought from Porto Rico to the United States are imports is a fundamental question, not within the scope of their authority. A case coming closer is United States v. Klingenberg, 153 U. S. 93, 104, 14 Sup. Ct. 790, 38 L. Ed. 647, in regard to the revision of a collector's action in estimating the value of a foreign coin under the particular circumstances of the case; but even there the Supreme Court reversed the judgment of the Circuit Court declining to take jurisdiction, hold-

ing that in any event it was proper for that court, in one view, to adjudge that the Board of Appraisers had no jurisdiction, and therefore to reverse the Board, and, in the other view, to review its decision.

Coming, however, directly to the present case and the provisions of section 14 of the act of June 10, 1890, we would observe, in the first place, that the Supreme Court has taken, on the whole, a liberal view as to the jurisdiction of the Board of General Appraisers, in that, in Lawder v. Stone, 187 U. S. 281, 23 Sup. Ct. 79, 47 L. Ed. 178, it reviewed and sustained its decision with reference to portions of a cargo of fruit which decayed on the voyage and became utterly worthless. This was not literally a question of "rate and amount of duties." So United States v. Passavant, 169 U. S. 16, 18 Sup. Ct. 219, 42 L. Ed. 644, took a like liberal view of the sections of the statute here in question. While section 14 limits the questions to be ultimately determined to the "rate and amount of duties," yet it directs the Board of General Appraisers to "examine and decide the case" submitted in the papers communicated to it by the collector. This literally gives the board jurisdiction over "the case." "The case" in practice, and necessarily, includes the protest, which must be, and always is, forwarded to the board by the collector. The words "the case," therefore, literally require the board, first of all, to determine its own jurisdiction, so far, at least, as to ascertain whether there is a protest, or whether the protest is apparently valid. This, of course, involves the question whether it was made in time, because, if not made in time, it is not a protest. So far as this is concerned, the jurisdiction of the courts on appeal is coextensive with that of the board. United States v. Klingenberg, 153 U. S. 93, 102, 14 Sup. Ct. 790, 38 L. Ed. 647.

Such seems to have been the practice of the courts. In Re Guggenheim Smelting Co., 112 Fed. 517, 521, 50 C. C. A. 374, the Circuit Court of Appeals, with both tribunals below, found that the protest was invalid; but, so far from directing a judgment that the Circuit Court and the Board of General Appraisers had no jurisdiction, it affirmed. This it could not have done properly if the Board of General Appraisers had no jurisdiction with reference to that particular topic. Likewise, United States v. Salambier, 170 U. S. 621, 18 Sup. Ct. 771, 42 L. Ed. 1167, took jurisdiction of a question as to the validity of a protest coming up from the Board of General Appraisers. There the board ruled directly on the sufficiency of the protest, and held it to be valid. The United States appealed to the Circuit Court, which court affirmed the decision. Thereupon, on an appeal being taken to the Circuit Court of Appeals, that court certified the question of the validity of the protest to the Supreme Court, which answered the certified question in favor thereof. Thus, throughout, the jurisdiction of the General Board of Appraisers to determine the sufficiency of the protest was recognized and practically sustained. The same recognition was given by the Circuit Court for the Southern District of New York, and by the Circuit Court of Appeals for the Second Circuit, as shown in Shaw v. United States, 122 Fed. 443, 58 C. C. A. 425. The sufficiency of the protest was the only question in the case. The Board of General Appraisers held it insufficient. The Circuit Court sustained the board; but the Circuit Court of Appeals considered and adjudicated the ques-

tion of the validity of the protest, and held it sufficient. Thus it necessarily assumed that the board had jurisdiction over the question.

The condition would be a very unfortunate one if the Board of General Appraisers had no jurisdiction with reference to questions as to the validity of protests, and the result would be in contradiction to the purpose of the statute we are considering, which is entitled "An act to simplify the laws," etc. If it had no jurisdiction, and if, consequently, no jurisdiction vested in the Circuit Court over the same topic on an appeal, it would follow that, instead of simplifying the position, the act of June 10, 1890, would very much complicate it in some respects. Prior to this act, all questions involved, including the validity of the protest, were settled in a single suit against t'.e collector, while now two suits would be required, one an appeal from the Board of Appraisers as to the rate of duty, and another for the purpose of ascertaining whether there was a valid protest. It would in that event, however, be difficult to determine where the latter question was to be litigated. In other words, the question of the validity of the protest is, of course, vital, and it should be litigated somewhere. Since the act of June 10, 1890, it may be doubted whether there is any place left for litigating it except before the Board of General Appraisers, and therefore it would seem to follow that the law intended that jurisdiction in reference thereto should be taken as has been taken in the various cases which we have cited. Every consideration looks to this conclusion, while there is no necessity arising from the construction of the statute, and no reason of convenience or of justice, which leads otherwise.

Under the circumstances of the case, we find that the Board of General Appraisers accepted the protest as sufficient; that in the appeal of the United States to the Circuit Court this was not questioned; that the Board of General Appraisers had jurisdiction over the subject-matter thereof; and that the United States could not, for the reasons stated, challenge the protest in the Circuit Court, and, consequently, cannot challenge it here. Therefore, without finding it necessary to consider the particular reasons which governed the action of the Circuit Court, we agree with its practical conclusion.

The decree of the Circuit Court is affirmed.