UNITED STATES *v.* FULD & Co. (No. 959). UNITED STATES *v.* KRON-FELD, SAUNDERS & Co. (No. 960). KRONFELD, SAUNDERS & Co. *v.* UNITED STATES (No. 979).[1]

1. OBJECTION FIRST MADE ON APPEAL.
    The objection to the sufficiency in form of the protests on the ground of multifariousness, raised for the first time here, comes too late.

2. POST CARDS, PRINTED, EMBOSSED, AND SPRAYED.
    The provision in paragraph 412, tariff act of 1909, beginning " all other articles than those hereinbefore specifically provided," relates only to such goods as are lithographically printed and not to such as those in one of these appeals, admittedly not lithographed.

3. PROVISO, PARAGRAPH 412, TARIFF ACT OF 1909.
    The construction given this clause by the board harmonizes otherwise repugnant provisions *in pari materia* and most nearly effects what must be taken to have been the plain intent of the Congress.

United States Court of Customs Appeals, May 23, 1913.

APPEAL from Board of United States General Appraisers, Abstract 29228 (T. D. 32681).

[Affirmed.]

*William L. Wemple*, Assistant Attorney General (*Thomas J. Doherty*, special attorney, of counsel), for the United States.
*Comstock & Washburn* and *Walden & Webster* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This record contains three appeals from a single decision of the Board of General Appraisers, two of which raise the same issue for two different firms, and the third presents a separate issue of one of the same firms. Three distinct issues are presented:

## I.

The first question raised in all the appeals is the claimed insufficiency of the protests as multifarious. This objection concededly is as to their form. This claim was not urged before the Board of General Appraisers, and is for the first time urged in this court.

Inasmuch as we overruled the appeal of the importer on other grounds it is unnecessary to discuss the question as to whether an

---

[1] Reported in T. D. 33476 (24 Treas. Dec., 852).

appeal by them opens anew the question of the sufficiency of the protests. Upon the appeal by the Government the question is whether a reversal may be asked in this court on a point not made before the board and for the first time suggested here in a case where, as in the present, the subject matter is within the board's jurisdiction and all points *submitted* to the board were correctly decided. The only assignment of error which raises the question presented alleges that the board erred in not holding that the protests herein were not sufficient. There is no statement that the board was called upon to rule upon the sufficiency of the protests or that it did in fact so rule. On the contrary, it is claimed that no such question was presented.

It is a general rule of law governing appellate courts that points not made before a trial court are not subject to review. United States *v.* Brown, Durrell & Co. (127 Fed., 793, 798); Bradstreet *v.* Thomas (12 Peters (37 U. S.), 57, 62); Voorhees *v.* United States Bank (10 Peters (35 U. S.), 449, 472). It is true there is an exception to this rule in a case where a court has undertaken to decide a matter wholly beyond its jurisdiction, but we do not understand that the court will either *sua sponte* or on a complaint first made to the appellate tribunal review a decision which relates to the form of a pleading which appears to have been good enough to enable all parties to act upon it intelligently. For a very able discussion of this latter question see United States *v.* Brown, Durrell & Co. (127 Fed., 793); Henderson *v.* Sherman (47 Mich., 267); Bell *v.* Todd (51 Mich., 21); Miller *v.* Thompson (34 Mich., 10); Hopkins *v.* Ruggles (51 Mich., 475).

We think the objection to the sufficiency in form of the protests herein on the ground of multifariousness, raised for the first time in this court, comes too late.

## II.

The importation was of post cards, printed, embossed, and sprayed. The collector assessed the entire importation, the subject of the appeals, under the provisions of the proviso to paragraph 415, tariff act of 1909, as "embossed paper articles" or "embossed printed matter."

In one of the protests (549246) the importers' material reliance is made upon paragraph 416 of said act that the goods are dutiable as "printed matter not specially provided for," and in the others that they are either dutiable as last stated or as "embossed articles of paper" under the latter part of paragraph 412 of said act. The board sustained the first claim only, overruling all others. Both parties appeal.

We recite these paragraphs in the order of occurrence and consideration. As the determining consideration involves a construction of

paragraph 412, we quote it in divisions of our own for the purpose of plainer reference, as follows:

(1) 412. Pictures, calendars, cards, labels, flaps, cigar bands, placards, and other articles, composed wholly or in chief value of paper, *lithographically printed in whole or in part from stone*, metal, or material other than gelatin (except boxes, views of American scenery or objects, and music, and illustrations when forming a part of a periodical or newspaper, or of bound or unbound books, accompanying the same, not specially provided for in this section), shall pay duty at the following rates: Labels and flaps, printed in less than eight colors (bronze printing to be counted as two colors), but not printed in whole or in part in metal leaf, twenty cents per pound; cigar bands of the same number of colors and printings, thirty cents per pound; labels or flaps printed in eight or more colors, but not printed in whole or in part in metal leaf, thirty cents per pound; cigar bands of the same number of colors and printings, forty cents per pound; labels and flaps, printed in whole or in part in metal leaf, fifty cents per pound; cigar bands, printed in whole or in part in metal leaf, fifty-five cents per pound; all labels, flaps, and bands not exceeding ten square inches cutting size in dimensions, if embossed or die-cut, shall pay the same rate of duty as hereinbefore provided for cigar bands of the same number of colors and printings (but no extra duty shall be assessed on labels, flaps, and bands for embossing or die-cutting); (2) booklets, seven cents per pound; books of paper or other material for children's use, not exceeding in weight twenty-four ounces each, six cents per pound; fashion magazines or periodicals, printed in whole or in part by lithographic process, or decorated by hand, eight cents per pound; booklets, decorated in whole or in part by hand or by spraying, whether or not lithographed, fifteen cents per pound; decalcomanias in ceramic colors, weighing not over one hundred pounds per thousand sheets on the basis of twenty by thirty inches in dimensions, seventy cents per pound and fifteen per centum ad valorem; weighing over one hundred pounds per thousand sheets on the basis of twenty by thirty inches in dimensions, twenty-two cents per pound and fifteen per centum ad valorem; if backed with metal leaf, sixty-five cents per pound; all other decalcomanias, except toy decalcomanias, forty cents per pound; (3) All other articles than those hereinbefore specifically provided for in this paragraph, not exceeding eight one-thousandths of one inch in thickness, twenty cents per pound; exceeding eight and not exceeding twenty one-thousandths of one inch in thickness, and less than thirty-five square inches cutting size in dimensions, eight and one-half cents per pound; exceeding thirty-five square inches cutting size in dimensions, eight cents per pound, and in addition thereto on all of said articles exceeding eight and not exceeding twenty one-thousandths of one inch in thickness, if either die-cut or embossed, one-half of one cent per pound; if both die-cut and embossed, one cent per pound; exceeding twenty one-thousandths of one inch in thickness, six cents per pound: *Provided*, That in the case of articles hereinbefore specified the thickness which shall determine the rate of duty to be imposed shall be that of the thinnest material found in the article, but for the purposes of this paragraph the thickness of lithographs mounted or pasted upon paper, cardboard, or other material, shall be the combined thickness of the lithograph and the foundation on which it is mounted or pasted.

415. * * * *Provided*, That paper embossed, or cut, die-cut, or stamped into designs or shapes, such as initials, monograms, lace, borders, bands, strips, or other forms, or cut or shaped for boxes, plain or printed but not lithographed, and not specially provided for in this section, shall be dutiable at thirty-five per centum ad valorem; articles composed wholly or in chief value of paper printed by the photogelatin process and not specially provided for in this act, three cents per pound and twenty-five per centum ad valorem.

416. Books, * * * and printed matter, all the foregoing wholly or in chief value of paper, and not specially provided for in this section, * * *.

Observing the lines of arrangement we have made, *supra*, or by any other viewpoint, it is obvious that our part (3) of the paragraph predicated of "all other articles" is either misplaced or is a residuary clause competing with every other residuary clause in the act. Literally it would apply to every kind and class of merchandise imported. That it is residuary to what immediately precedes in our part (2) is contradicted not alone by the inclusive and complete terms of all of the provisions included therewithin and by its total inharmony with parts thereof. The only parts thereof to which it would be in any practicable or sensible way applicable would be to "decalcomanias in ceramic colors," which provision is complete in said section (2) covering and providing a rate of duty for every range of such. To apply this provision thereto would only add confusion by applying two rates of duty in the same paragraph to the same articles. It is therefore certain that Congress did not intend to relate this provision (3) to provision (2), which in the text it immediately follows.

That it should follow immediately after and be read in conjunction with and as a part of our part (1) is made obvious, because, when so read, not only the converse of the above objections follows, but thereby a systematic rate of duties upon *all* lithographic matter of that general class is had, and without such arrangement a large class of such commercial lithographs are without specific provision in an act purporting to so provide duties. For example and witness: Predicated of "shall pay duty at the following rates" in our part (1) are "*pictures, calendars, cards,* labels, flaps, cigar bands, *placards,* and other articles, \* \* \* lithographically printed," etc. Following therein rates of duty are specifically fixed upon "labels," "flaps," and "cigar bands," but no rates are therein fixed for the other enumerated "pictures," "calendars," "cards," "placards," or for "all other articles." If, therefore, our part (3) be not brought over so as to follow and refer to this part (1) of the paragraph these articles are left without any prescribed rate of duty. The context and subject matter of part (3) is exactly applicable to part (1), makes complete and uniform the partial legislation therein expressed, and not being reasonably referable to any other part of the paragraph must be read as a part thereof to give harmonious or any effect to all parts of the paragraph.

We therefore are constrained to here apply that rule of construction best expressed in Lewis's Sutherland on Statutory Construction (sec. 386), as follows:

Words, phrases, and sentences may be transposed when necessary to give effect to all the words of a statute and to carry out the manifest intent.

And, further, the same author states:

If a condition or qualifying clause has been misplaced, so that in the connection where it is inserted it is absurd or nonsensical, the court will apply it to its proper subject and give it effect if the statute affords the proper clues and it can be done in furtherance of its obvious intent. Lewis's Sutherland on Statutory Construction (sec. 410).

Or, as substantially the same result may be arrived at in the case by reading the word "lithographic" into our part (3) immediately after the words "all other," the rule stated by the same authority at section 382 may be invoked, as follows:

> The intention of the legislature being ascertained with reasonable certainty, words may be supplied in the statute so as to give it effect and avoid any repugnancy or inconsistency with such intention.

The repugnancy of the provisions of this paragraph in the order written has previously been pointed out by this court. United States v. Hagelberg (3 Ct. Cust. Appls., 341; T. D. 32626); Overton v. United States (2 Ct. Cust. Appls., 422; T. D. 32172).

In the latter case this court said, *obiter*, what is here found a necessary matter for decision. The court said, speaking of the paragraph:

> It then concludes by declaring that "all articles other than those hereinbefore specifically provided for" in the paragraph, which must include lithographically printed articles, * * *.

The view was early indicated by the board in an unpublished opinion by General Appraiser Fischer, Abstract 24880 (T. D. 31335), wherein it is aptly and concisely stated:

> We do not believe that the clause above quoted applies to any article, provided it has the requirements of dimensions and thickness there specified, but in our opinion it is limited to lithographically printed paper articles that comply in measurement and thickness with the conditions stated. To hold otherwise would exclude from the paragraph the very boundary lines which have always been used to separate lithographic prints paying a certain specific rate from such as pay either a less or greater rate per pound. The paragraph is to be limited to lithographically printed articles, with the exception of certain specified goods, the provisions for which are so worded as to permit of the contrary. The presence of such nonlithographic provisions in this paragraph (412) is readily accounted for when it is observed that such goods were provided for in the paragraph of the act of 1897 that covered lithographic prints (400), and no doubt it was deemed unnecessary to provide for them elsewhere or to find some other paragraph wherein to incorporate them.

We are in full accord with this view and this disposes of the appeal of Kronfeld, Saunders & Co. herein, whose contention is that their goods, admittedly not lithographed, were dutiable under our part (3) of paragraph 412. We think that provision is applicable only to such goods as are lithographically printed.

### III.

The remaining contention is whether the proviso to paragraph 412 relates solely to such goods as are *produced* by one or more of the processes therein named, or to such as being articles otherwise produced are thereafter subjected to any of the processes designated by that proviso.

The impracticability of the embossing as a *producing* process lends hesitancy to that conclusion. That, however, is not a physical or

mechanical impossibility; and reading together all the paragraphs *in pari materia* we are satisfied this view is attended with fewer objections than any other.

The language employed in the proviso to paragraph 415 is that of a specific description intended to apply to the therein enumerated articles rather than a general clause modifying other clauses or a catchall residuum clause. It does not say that "*all* paper embossed;" etc., nor "*all other* paper embossed," etc.; but "paper *embossed*, or cut, die-cut, or stamped *into designs or shapes*," etc. The proviso is likewise unrelated in any congruous relation to the purview of the paragraph. It seems an independent provision inserted as a proviso. Additional force is given this conclusion in that Congress has been careful in every other paragraph of the act providing for papers and articles that usually are or might be embossed or die cut, or both, to specifically provide for such when so embossed or die cut, which would seem to ordinarily render this provision of but little if any application (see pars. 411, 412, 413, and 414) and renders its application here a matter of accident rather than of intent. Indeed, to give this provision any other construction renders it duplicate legislation with parts of these several other paragraphs, prescribing a different rate of duty upon the same described articles.

We agree with the board in its unpublished opinion in Abstract 24233 (T. D. 51070), wherein, speaking of this proviso, it stated:

It is apparent to us that the proviso cited has no application to printed matter in the form of private mailing or souvenir postcards. The proviso has reference to forms of paper *produced* by embossing, cutting, or stamping, rather than to completed articles, to some of which any of the processes referred to may have been applied as an additional feature of ornamentation.

This record does not disclose the possibility or impossibility of embossing paper into shapes or designs as a producing process from the paper materials, and we are unable, therefore, to say whether or not this construction does or does not render the word " embossing " as found in the proviso without effect. In any event we think the construction here given harmonizes otherwise inharmonious and repugnant provisions *in pari materia* and most nearly effects the plain intent of Congress.

So words which are meaningless or inconsistent with the intention otherwise plainly expressed in an act have sometimes been rejected as redundant or surplusage.—Lewis's Sutherland on Statutory Construction (sec. 410).

As the cards the subject of decision in Knauth, Nachod & Kuhne *v.* United States (3 Ct. Cust. Appls., 183; T. D. 32465) were produced by die cutting there is nothing in that decision which contravenes this conclusion.

We think the Board of General Appraisers committed no error and their decision is in all respects *affirmed.*