JAMES AKEROYD & SON *v.* UNITED STATES (No. 3415) [1]

---

[1] T. D. 45341.

United States Court of Customs and Patent Appeals, November 27, 1931

*Puckhafer, Rode & Tompkins* (*J. Stuart Tompkins of counsel*) for appellant.
*Charles D. Lawrence,* Assistant Attorney General (*Thomas J. Canty* and *Ralph Folks,* special attorneys, of counsel), for the United States.

[Oral argument October 14, 1931, by Mr. Tompkins and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

Lenroot, Judge, delivered the opinion of the court:

The merchandise involved herein consists of New Zealand wool, entered at the port of Philadelphia by appellant on June 22, 1922.

On October 26, 1922, liquidation took place, the wool being classified and assessed for duty at 45 cents per pound under the provisions of paragraph 18 of the Emergency Tariff Act of 1921. On December 18, 1922, appellant filed with the collector a protest against the liquidation at 45 cents per pound, claiming the merchandise to be dutiable at 30 cents per pound, as washed wool, under the provisions of said paragraph 18 of the Emergency Tariff Act of 1921.

On May 23, 1928, the trial of the action in the lower court was begun, five witnesses for appellant being heard, after which the case was continued to the next Philadelphia docket.

On September 17, 1928, the following stipulation was filed:

It is hereby stipulated that the wool covered by the above named protest consists of washed clothing wool, not sorted or increased in value by the rejection of any part of the original fleece.

Said protest is submitted upon this stipulation, and the record in this case as heretofore made.

The case was thereupon submitted for decision. Up to this point the record indicates that the Government had not raised any question of jurisdiction of the court below to entertain the protest, or of the invalidity thereof.

On November 1, 1928, the Customs Court rendered a decision sustaining the claim of the protest that the merchandise was dutiable at 30 cents per pound under the provisions of said paragraph 18 of the Emergency Tariff Act of 1921.

On November 17, 1928, the Government applied for a rehearing of the case upon the ground that the protest was not filed within 30 days after liquidation, and therefore was not in conformity with the requirements of Section III, paragraph N, of the Tariff Act of 1913. This motion was accompanied by an affidavit of one of the special attorneys of the Government, setting forth that the record

in the case shows that the protest was not filed within 30 days after liquidation of the entry.

On March 1, 1929, an order was entered, granting the motion for rehearing, Brown, J., dissenting.

On April 15, 1929, further testimony was taken and on September 9, 1930, the lower court rendered a decision, Judge Brown dissenting, overruling the protest upon the ground that the protest was not filed in time and that the court was without jurisdiction to hear the case. On the same day, judgment was entered overruling the protest. From such judgment this appeal is taken.

The first question to be considered is as to the timeliness of the protest. It was filed with the collector 53 days after liquidation of the entry by him.

Section 4 of Title I of the Emergency Tariff Act of 1921 provided as follows:

The duties imposed by this title shall be levied, collected, and paid on the same basis, in the same manner, and subject to the same provisions of law, excluding penalties, as the duties imposed by such Act of 1913.

Paragraph N of Section III of the Tariff Act of 1913 reads as follows:

N. That the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise, or upon merchandise on which duty shall have been assessed, including all dutiable costs and charges, and as to all fees and exactions of whatever character (except duties on tonnage), shall be final and conclusive against all persons interested therein, unless the owner, importer, consignee, or agent of such merchandise, or the person paying such fees, charges, and exactions other than duties, shall, within thirty days after but not before such ascertainment and liquidation of duties, as well in cases of merchandise entered in bond as for consumption, or within fifteen days after the payment of such fees, charges, and exactions, if dissatisfied with such decision imposing a higher rate of duty, or a greater charge, fee, or exaction, than he shall claim to be legally payable, file a protest or protests in writing with the collector, setting forth therein distinctly and specifically, and in respect to each entry or payment, the reasons for his objections thereto, and if the merchandise is entered for consumption shall pay the full amount of the duties and charges ascertained to be due thereon. * * *

Upon such payment of duties, protest, and deposit of protest fee, the collector shall transmit the invoice and all the papers and exhibits connected therewith to the board of nine general appraisers, for due assignment and determination as provided by law; such determination shall be final and conclusive upon all persons interested therein, and the record shall be transmitted to the proper collector or person acting as such, who shall liquidate the entry accordingly, except in cases where an appeal shall be filed in the United States Court of Customs Appeals within the time and in the manner provided for by law.

Section 514 of the Tariff Act of 1922 provides that a protest against a decision of the collector may be filed within 60 days after such decision.

Section 641 of the Tariff Act of 1922 reads as follows:

SEC. 641. RIGHTS AND LIABILITIES.—The repeal of existing laws or modifications thereof embraced in this Act shall not affect any act done, nor any right accruing or accrued, nor any suit or proceeding had or commenced in any civil or criminal case prior to said repeal or modifications, but all liabilities under said laws shall continue and may be enforced in the same manner as if said repeal or modifications had not been made. All offenses committed and all penalties, forfeitures, or liabilities incurred prior to the taking effect hereof, under any statute embraced in, or changed, modified, or repealed by this Act, may be prosecuted and punished in the same manner and with the same effect as if this Act had not been passed. No acts of limitation now in force, whether applicable to civil causes and proceedings, or to the prosecution of offenses or for the recovery of penalties or forfeitures embraced in, modified, changed, or repealed by this Act shall be affected thereby so far as they affect any suits, proceedings, or prosecutions, whether civil or criminal, for causes arising or acts done or committed prior to the taking effect of this Act, which may be commenced and prosecuted within the same time and with the same effect as if this Act had not been passed.

Appellant contends that inasmuch as the entry involved was not liquidated by the collector until after the Tariff Act of 1922 went into effect, and the protest could not be filed before liquidation, the provision of said section 514 of the Tariff Act of 1922, allowing protests to be filed within 60 days after liquidation, is applicable, and that the protest here in issue, having been filed within 60 days after liquidation by the collector, was timely. It contends that the time fixed in said section 514 for the filing of protests was a mere alteration of procedure and did not affect a right or remedy within the meaning of said section 641.

The matter of the construction of said section 641 has been before this court in a number of cases, but in none of them was the precise question here presented involved.

In the case of *United States* v. *Neuman & Schwiers Co.*, 12 Ct. Cust. Appls. 207, T. D. 40224, the right to amend a protest was involved. After citing the cases of *Brown & Co.* v. *United States*, 12 Ct. Cust. Appls. 93, T. D. 40026, and *Scaramelli* v. *United States*, 12 Ct. Cust. Appls. 134, T. D. 40056, the court said:

\* \* \* Those decisions construed and applied the provisions of section 641 of the latter act, and in effect held thereunder that in general when merchandise had been entered under the former act the procedure provided by it should be followed throughout with relation to the collection of duties thereon and the rights and remedies of the parties in the proceedings incident thereto. \* \* \*

In the case of *Woolworth Co.* v. *United States*, 13 Ct. Cust. Appls. 176, T. D. 41037, this court, speaking through Judge Hatfield, after quoting said section 641 of the Tariff Act of 1922 and section 299 of the Judicial Code of the United States and commenting upon the same, said:

It requires but little study to note the clear distinction between the provisions of section 641, *supra*, and those contained in section 299 of the Judicial Code.

The first two clauses in section 641, supra, are not limited by any such language as "and suits and proceedings for causes arising or acts done prior to said date," but, on the contrary, they are followed by the clause, "*but all liabilities under said laws shall continue and may be enforced in the same manner* as if said repeal or modifications had not been made." (Italics ours.) The latter clause is rather one of extension than of limitation, and we think that its use in connection with the preceding clauses in the section, when read in connection with the administrative provisions of the Tariff Act of 1922, clearly indicates that Congress intended that all liabilities created by the entry of imported merchandise under the tariff act of 1913 should continue and be enforced under the provisions of that act and the regulations and rules of procedure adopted in accordance therewith, except as otherwise expressly provided; and as the existence of a liability necessarily involves the existence of a correlative right, all such rights and liabilities are preserved. This conclusion is supported by the general reasoning in the following cases heretofore decided by this court: *Brown & Co.* v. *United States*, 12 Ct. Cust. Appls. 93, T. D. 40026; *Scaramelli* v. *United States*, 12 Ct. Cust. Appls. 134, T. D. 40056; *United States* v. *Neuman & Schwiers Co.*, 12 Ct. Cust. Appls. 207, T. D. 40224; *Penick & Ford (Ltd., Inc.)* v. *United States*, 12 Ct. Cust. Appls. 218, T. D. 40228; *Fougera & Co.* v. *United States*, 12 Ct. Cust. Appls. 253, T. D. 40266.

The merchandise involved in this case was entered for consumption under the act of 1913, and the liability for the payment of the legal duties was incurred under the provisions of that act. The procedure for the ascertainment and determination of the rate and amount of duties to be paid thereon and the collection of the same was provided for by that act and the regulations and rules adopted in accordance therewith, and such rights and liabilities, together with the procedure provided for the ascertainment and determination of such rights and liabilities, was preserved to the parties by the saving clause in the repealing act.

There is little that we can add to the foregoing construction of said section 641, which we here affirm.

The clause in said section—

but all liabilities under said laws shall continue and may be enforced in the same manner as if said repeal or modifications had not been made—

conclusively determines this question.

In the case at bar, appellant is asserting that a liability of the Government exists under the Tariff Act of 1913, to wit, that under that law it has assessed excessive duties which have been paid by appellant, and which it now seeks to recover. It does not contend that the Government is liable to it under the Tariff Act of 1922, but that it is liable under the Tariff Act of 1913. If there is no liability upon the part of the Government under the act of 1913, then there is no liability at all upon its part, and this appellant concedes, for it seeks the benefits of the Tariff Act of 1922 only in what it claims is a mere matter of procedure, an extension of a remedy given by the Tariff Act of 1913. The liability itself is asserted under the Tariff Act of 1913, and we think that said liability and the provision for its enforcement under the act of 1913 are continued by said section 641 of the Tariff Act of 1922 as if there had been no repeal of the act of 1913.

In other words, we think that the proper construction of the phrase under consideration is that any liability *arising* under the Tariff Act of 1913 should continue and be enforced under the provisions of that act.

Appellant, however, insists that, even though this construction of the word "liabilities," as used in said clause, be correct, nevertheless the protest was timely because said section 641 provides that while all liabilities under the said act of 1913 shall continue, it also provides that they "may be enforced" under said act of 1913, thereby indicating that Congress intended that one who asserts a liability should have the option of doing so either under the Tariff Act of 1913 or the Tariff Act of 1922.

This argument does not impress us. We think that the word "may," as used in this connection, merely recognizes that a party may or may not see fit to assert a liability, and in that sense it is not mandatory; but, if a liability is asserted, the remedy must be sought under the provisions of the Tariff Act of 1913. If this be not true, then clearly the court was wrong in its decision in the case of *Woolworth Co.* v. *United States, supra,* wherein it held that a protest filed in 1923 against a classification and assessment of duty upon merchandise entered under the Tariff Act of 1913 could not be amended after the lapse of time allowed for its filing; the same observation applies to our decision in the case of *United States* v. *Neuman & Schwiers Co., supra,* where a like question was involved.

If appellant's theory is correct, then either the importer or the Government in the case at bar might, at its option, have *all* the remedies provided by the Tariff Act of 1922 in enforcing a liability arising under the Tariff Act of 1913. Appellant does not contend that our decisions in the two cases last cited should be overruled, but, should we adopt the construction of the word "may" contended for by appellant, such a result would logically follow.

We are clear that Congress, in the enactment of said section 641, did not intend that a liability arising under the Tariff Act of 1913 might, at the option of the party asserting it, be enforced under either the Tariff Act of 1913 or the Tariff Act of 1922.

The decisions of the Supreme Court and other courts cited and relied upon by appellant are not applicable to the proper construction of section 641 for the reason that none of them involved the construction of statutory language similar to the clause here considered, namely—

all liabilities under said laws shall continue and may be enforced in the same manner as if said repeal or modifications had not been made.

The case of *United States* v. *T. J. McGrath & Co.,* 16 Ct. Cust. Appls. 97, T. D. 42755, involved the validity of a protest against an assessment of merchandise entered prior to September 21, 1922, but erroneously classified and assessed for duty by the collector in 1923 under the

provisions of the Tariff Act of 1922. The protest was made more than 30, but within 60, days after said liquidation. The protest was held to be timely although the goods were dutiable under the provisions of the Tariff Act of 1913. The court in its opinion said:

The collector reliquidated the entry on the theory that the goods were dutiable under the Tariff Act of 1922, and as the importer protested against that reliquidation within the time prescribed by the act under which the reliquidation was made, it can not be said that the protest was untimely. The Government can not claim that the goods were, for protest purposes, subject to the Tariff Act of 1913 and for duty purposes amenable to the Tariff Act of 1922. Against the liquidation made February 1, 1923, under the Tariff Act of 1913 the importer was bound to protest within 30 days as prescribed by the act, but that limitation of time did not apply to a protest against a reliquidation assessing duties under the act of 1922. The act of 1922 fixes 60 days as the time within which protests may be lawfully filed against liquidations made under its provisions. As the collector reliquidated the entry and subjected the goods to the duties imposed by paragraph 1430 of said act, we must hold that the importer's protest, having been filed within 60 days after such reliquidation, was filed in time.

We hold that the protest here in question was untimely, it having been filed more than 30 days after the liquidation of the entry.

The next question is, The protest not having been filed within the time required by law, did the lower court acquire jurisdiction over the case at bar; in other words, Did the failure of appellant to file its protest in time present a jurisdictional question?

Under the provisions of paragraph N of Section III of the Tariff Act of 1913, hereinbefore quoted, it is provided that decisions of the collector as to the rate and amount of duties chargeable upon imported merchandise "shall be final and conclusive against all persons interested therein" unless protest is filed within 30 days after such decision. Therefore, at the time the protest herein was filed, the decision of the collector liquidating the merchandise here involved was final and conclusive, and the protest filed was invalid because not filed within the time provided by law.

In the case of *United States* v. *Loeb & Schoenfeld Co.*, 7 Ct. Cust. Appls. 380, T. D. 36961, the court said:

* * * the Government has a right to prescribe the terms upon which it will submit to the jurisdiction of the courts in the collection of its revenues, and the judicial department of the Government can intervene in such matters only within the limitations and under the conditions imposed. Auffmordt *v.* Hedden (137 U. S. 310, 324, 329).

It is well settled that a protest serves not only as a notice to the collector of alleged errors in his classification, but as well for the purpose of an appeal to the United States Customs Court, in case the collector declines or fails to make his decision conform to the protest. *United States* v. *Straus & Sons et al.*, 5 Ct. Cust. Appls. 147, T. D. 34193; *United States* v. *McCoy*, 5 Ct. Cust. Appls. 264, T. D. 34445.

Whether a protest filed after the time provided in the statute had elapsed could confer any jurisdiction upon the lower court has never been directly decided by this court, but we think the principle involved has been definitely settled by the Supreme Court of the United States.

The case of *Finn* v. *United States*, 123 U. S. 227, involved the construction of a provision of the act of March 3, 1863, conferring certain jurisdiction upon the Court of Claims, which provision read as follows:

SEC. 10. That every claim against the United States, cognizable by the Court of Claims, shall be forever barred, unless the petition setting forth a statement of the claim be filed in the court, or transmitted to it under the provisions of this act, within six years after the claim first accrues: *Provided*, That claims which have accrued six years before the passage of this act shall not be barred if the petition be filed in the court, or transmitted as aforesaid, within three years after the passage of this act: * * *

In that case it was contended that the six-years' limitation there involved did not operate of its own force as a bar, but that it was a defense and that the party making such defense must plead it. The court said:

* * * It appears from the finding of facts that more than ten years had expired after the claim first accrued before it was presented to the proper department for settlement; and more than six years after the passage of the act of 1868, Rev. Stat. §§1063, 1064, which authorized the head of an executive department to transmit to the Court of Claims, for adjudication, any claim which involved disputed facts or controverted questions of law, or the decision of which would affect a class of cases, or furnish a precedent for future action. Consequently, in any view, this claim belonged to the class which, under the express words of the act of 1863, Rev. Stat. §1069, were "forever barred," so far, at least, as the claimant had the right to a judgment in that court against the United States. *The duty of the court, under such circumstances, whether limitation was pleaded or not, was to dismiss the petition;* for the statute, in our opinion, makes it a condition or qualification of the right to a judgment against the United States that—except where the claimant labors under some one of the disabilities specified in the statute—the claim must be put in suit by the voluntary action of the claimant, or be presented to the proper department for settlement, within six years after suit could be commenced thereon against the Government. Under the appellant's theory of the case, the second comptroller could open the case twenty years hence, and, upon the claim being transmitted by the Secretary of the Treasury to the Court of Claims, that court could give judgment upon it against the United States. We do not assent to any such interpretation of the statutes defining the powers of that court.

The general rule that limitation does not operate by its own force as a bar, but is a defence, and that the party making such a defence must plead the statute if he wishes the benefit of its provisions, has no application to suits in the Court of Claims against the United States. An individual may waive such a defence, either expressly or by failing to plead the statute; but the Government has not expressly or by implication conferred authority upon any of its officers to waive the limitation imposed by statute upon suits against the United States in the Court of Claims. Since the Government is not liable to be sued, as of right, by any claimant, and since it has assented to a judgment being rendered against it

only in certain classes of cases, brought within a prescribed period after the cause of action accrued, a judgment in the Court of Claims for the amount of a claim which the record or evidence shows to be barred by the statute, would be erroneous. (Italics ours.)

The case of *Nichols* v. *United States*, 7 Wall. 122, cited in the above case, involved the question of the jurisdiction of the Court of Claims in a case involving tariff duties where no protest had been filed by the appellant as required by an act of Congress of February 26, 1845. The court held that the Court of Claims had no jurisdiction of cases arising under the revenue laws then in force, but in the course of its opinion said:

\* \* \* In the administration of the tariff laws, as we have seen, the Secretary of the Treasury decides what is due on a specific importation of goods, but if the importer is dissatisfied with this decision, he can contest the question in a suit against the collector, if, before he pays the duties, he tells the officers of the law, in writing, why he objects to their payment.

And an equal provision has been made to correct errors in the administration of the internal revenue laws. The party aggrieved can test the question of the illegality of an assessment or collection of taxes, by suit; but he can not do this until he has taken an appeal to the Commissioner of Internal Revenue. If the commissioner delays his decision beyond the period of six months from the time the appeal is taken, then suit may be brought at any time within twelve months from the date of the appeal.[1] Thus it will be seen that the person who believes he has suffered wrong at the hands of the assessor or collector can appeal to the courts; but he can not do this until he has taken an intermediate appeal to the commissioner, and *at all events, he is barred from bringing a suit unless he does it within a year from the time the commissioner is notified of his appeal.* The object of these different provisions is apparent. While the government is desirous to secure the citizen a mode of redress against erroneous assessments or collections, it says to him, We want all controverted questions concerning the revenue settled speedily, and if you have complaint to make, you must let the Commissioner of Internal Revenue know the grounds of it; but if he decides against you, or fails to decide at all, you can test the question in the courts if you bring your suit within a limited period of time.

These provisions are analogous to those made for the benefit of the importing merchant, and the same results necessarily follow. *If the importer does not protest, his right of action is gone.* \* \* \* (Italics ours.)

The case of *United States* v. *Alexis Porche*, 53 U. S. 426, involved the question of whether the District Court of the United States for Louisiana had jurisdiction to entertain a suit against the United States when the suit was brought after the time for bringing such suits had elapsed, the statute involved providing that petitions not filed within two years from the passing of the act should be "forever barred."

The court held that there was no jurisdiction in such cases and that the petition should be dismissed because not filed within the time provided by law.

---

[1] 14 Stat. at L. 111, amended to pars 44, §19, on p. 152.

In that case it was claimed that the Government had waived the defense that the petition was filed too late by answering generally after a plea raising the question of jurisdiction had been overruled. Upon this point the court said:

\* \* \* As to the supposed waiver by the district attorney of his objection as to the time of filing the petition, by answering after his plea was overruled, it must be made, we suppose, upon a mistake as to the fact. For in his answer he insists upon the same defense. And he had a right to avail himself of it by way of answer as well as by plea. *But if he had, in express terms, waived it, and entered his waiver on the record, it would not have given jurisdiction to the court, when the act had not conferred it.* (Italics ours.)

We deem it unnecessary to cite other cases to the like effect, and hold that the United States Customs Court did not acquire jurisdiction in the case at bar because the protest was filed more than 30 days after liquidation of the entry and was therefore a nullity.

In the dissenting opinion of Judge Brown in the court below, reference is made to the case of *United States* v. *Brown, Durrell & Co.*, 127 Fed. 793, decided by the Circuit Court of Appeals, First Circuit, which seems to hold that the timeliness of a protest does not present a jurisdictional question. In so far as it does so hold, we decline to follow it, especially in view of the Supreme Court decisions hereinbefore cited and quoted from.

Having held that a protest filed after the time permitted by law is a nullity, and that the lower court could gain no jurisdiction therefrom, it follows that there could be no waiver of the question of jurisdiction of the lower court. Even had the Assistant Attorney General expressly stipulated that the Government waived the question of jurisdiction, the lower court could not have entertained the proceeding when lack of jurisdiction appeared upon the face of the record because Congress has never conferred upon the lower court jurisdiction of a case where the protest is filed too late, and has not, either expressly or by implication, conferred authority upon any of the officers of the Government to waive the limitation imposed by the statute. *Finn* v. *United States, supra; United States* v. *Porche, supra.*

It is established that a question of jurisdiction may be raised at any time during the pendency of the action. *Mansfield, Coldwater & Lake Michigan Railway Co., etc.* v. *Swan, etc.*, 111 U. S. 379, and cases cited; *J. K. Clarke* v. *United States*, 17 C. C. P. A. (Customs) 420, T. D. 43866.

Unquestionably, the lower court could of its own motion have set aside its judgment first rendered herein because of lack of jurisdiction to render it and ordered a rehearing upon that question, and it follows that there could be no abuse of discretion in its doing so upon motion of the Government.

Our attention has been called to the decision of this court in the case of *Alex. D. Shaw & Co.* v. *United States*, 16 Ct. Cust. Appls. 214, T. D. 42836, wherein the court used the following language:

\* \* \* The Government, in the court below, entered its motion to dismiss protests Nos. 169505–G and 160927–G on the ground that they were not filed within the period allowed by law. This motion was overruled by the Customs Court, and, the Government having assigned no cross errors, will be concluded in this respect by the judgment below. \* \* \*

It appears from the briefs that the important question of whether the timeliness of a protest raises a jurisdictional question was not argued in that case. This court has always held that the question of jurisdiction of a court could be raised at any time. In so far as the language referred to in the *Shaw* case, *supra*, holds that the question of the timeliness of a protest can not be raised without an assignment of error, such statement does not express the present view of this court.

It follows from what we have said that there was no error upon the part of the lower court in granting a rehearing upon the judgment first rendered by it; that the court never acquired any jurisdiction to pass upon the dutiability of the merchandise involved because the protest was not filed within 30 days after the liquidation by the collector, and that jurisdiction could not be conferred upon the lower court by the consent, express or implied, of the officers of the Government.

We regret that under the law there is no remedy afforded appellants by which they may recover duties which, when paid, were excessive, but it must be remembered that appellant could have filed its protest within 30 days after liquidation, in which event it would have been protected irrespective of whether the provisions of the Tariff Act of 1913 or section 514 of the Tariff Act of 1922 applied.

Appellant's counsel have presented a very able brief, but we are clear that we have properly determined the matters here in controversy.

The judgment of the lower court overrules the protest of appellant. There being lack of jurisdiction, the protest should have been *dismissed*. Therefore, the cause is *remanded* and the lower court is directed to *modify* its judgment accordingly.